ANN C. SHEDENHELM et al., Appellants, v. M. F. CAFFERTY, Sheriff, et al., Appellees.

**FRAUDS, STATUTE OF:** Transfers of Land—Oral Assignment of
1 **Dower—Objection by Third Parties.** The objection that an oral arrangement between a mother and all the heirs, under which she took certain lands as her distributive share in the lands of her husband, is unprovable because of the statute of frauds, is not available to a creditor of one of the heirs.

**DESCENT AND DISTRIBUTION:** Dower—Necessary Parties to
2 **Allotment—Creditors of Heir.** An allotment of the widow's distributive share in the lands of her husband is not void because creditors of an heir were not made parties thereto. Assuming, *arguendo*, that such creditors are "parties in interest" within the meaning of Sec. 3369, Code, 1897, yet, when not made parties, their rights may, nevertheless, be fully protected in any appropriate proceeding.

**DESCENT AND DISTRIBUTION:** Dower—Assignment—Right of
3 **Creditors of Heir to Question.** Creditors of an heir of the deceased may not question a fair and equitable allotment of the wife's distributive share, even though such creditors were not parties to such allotment.

**WILLS:** Right of Surviving Spouse—Election Between Will and
4 **Distributive Share—Evidence.** Direct evidence that the surviving wife elected to take her distributive share, instead of taking under the will, is not overcome by evidence (a) that she acted as one of the executors and received the proceeds of *exempt* property sold (the will giving her a life interest in the personal property) or (b) that she filed a motion asking that her legal share of the real estate owned by testator "and described in his will" be set off to her, all the real estate owned by deceased being so described in the will. On the contrary, such record shows an election to take the distributive share.

WILLS: Right of Surviving Spouse—Assignment of Dower—Displacing Interest of Devisee—Right to Contribution—Waiver— Judgment Lien Holders. A devisee, whose interest in certain lands has been annulled (a) by the refusal of the wife of testator to take under the will and (b) by the allotment to her, as her distributive share, of the very land in which such devisee held an interest under the will, may enforce contribution from the other devisees under the will to make good his loss. And as "one must be just before he is generous", a waiver of this right to contribution is voidable at the instance of devisee's existing judgment lien holders. (Sec. 3279-a, Code Sup., 1913.)

PRINCIPLE APPLIED: A testator had 300 acres of land. To each of four children he devised 40 acres. For a son, Oscar, he made no provision except that he devised to his wife a life estate in the remaining 140 acres and the remainder of such 140 acres to all his children after the death of the wife. The widow refused to take under the will. The 140 acres, in which Oscar had an interest under the will, was, in value, just one third of the entire real estate, and it was allotted to the widow as her distributive share. Judgment liens stood against Oscar from a time prior to the allotment of such distributive share. Oscar waived his right to contribution from the other devisees. *Held,* such waiver was voidable at the instance of the judment creditors.

DESCENT AND DISTRIBUTION: Right of Creditors—Interest of Devisee—Entry of Judgments—Evidence. Evidence reviewed, and held to show that the entry of judgments was prior to an arrangement under which a wife's distributive share was set aside.

EXECUTION: Auxiliary Proceedings—Equitable Proceedings—Failure to Serve Notice and Copy of Petition—Effect. The purpose of serving on defendant a notice and copy of the petition, in an equitable proceeding to subject property to the satisfaction of a judgment, as required by Sec. 4089, Code, 1897, is to secure *priority* of lien. Such service is not required when creditors are, as a matter of common cause, all contending for the establishment of liens on the same property without claim of priority among themselves.

EQUITY: Decree—Extent of Relief—Pleadings. He who seeks equity must do equity, or the court will do it for him, even though the pleading of the adversary be not the most exact.

APPEAL AND ERROR: Review—Questions First Raised on Appeal. Objections not made in trial court will not be considered on appeal.

*Appeal from Iowa District Court.*—R. P. HOWELL, Judge.

WEDNESDAY, FEBRUARY 16, 1916.

ORIGINALLY this was a suit in equity by Ann C. Sheden-helm against the defendant Cafferty, as sheriff, and Stapleton as an execution plaintiff, to enjoin a sale on execution of certain 140 acres of land alleged by plaintiff to belong to her. The execution in the hands of the sheriff was against Oscar Shedenhelm, a son of the plaintiff; and it was claimed by the defendants that he had an interest in the land subject to the life estate of the plaintiff. The defendants intended, therefore, to sell under execution such alleged interest of Oscar Shedenhelm in such real estate. The plaintiff claimed that the land had been allotted to her in fee simple as her distributive share in the estate of her deceased husband, whereas the defendants claimed that she had elected to take under the will of her husband, and that such will gave to her a life estate only in said land. Before trial had, all the beneficiaries of the estate of plaintiff's husband appeared and joined her as plaintiffs. On the other hand, five additional judgment creditors of Oscar Shedenhelm appeared and joined themselves as defendants. Each set up his own judgment and adopted the contentions of the first defendant, as already stated. Upon trial had, there was a decree for the plaintiff, Ann C. Sheden-helm, sustaining her contention. The decree also awarded relief to the defendants as against plaintiffs other than Ann C. Shedenhelm. From such decree, such other plaintiffs have appealed. The defendants also have appealed from that part of the decree which was favorable to Ann C. Shedenhelm. The appeal of the plaintiffs having been first taken, they will be designated as the appellants.—*Affirmed on both Appeals.*

*Popham & Havner,* for appellants.

*Stapleton & Stapleton, W. E. Wallace, J. M. Dower* and *C. E. Vance,* for appellees.

EVANS, C. J.—John Shedenhelm died testate in January, 1909, leaving surviving him his widow, Ann C. Shedenhelm, and six children, consisting of three sons and three daughters. He died seized of 300 acres of land, which was disposed of by his will. He devised 40 acres each to four of his children other than Oscar. To his wife, he devised a life estate in the remaining 140 acres, with a remainder to be divided equally among his six children. No other provision was made for Oscar. The testator also bequeathed to his wife the life use of his personal property. The widow and son Robert were designated as the executors, and they duly qualified as such. The nonexempt personal property was insufficient to pay the debts.

The widow and the children, all plaintiffs herein, have joined in the claim both in their pleadings and in their testimony that, shortly after the death of the testator, the mother being unwilling to accept the provisions of the will, they all orally agreed with her that the 140 acres should be allotted to her absolutely as her statutory distributive share. The defendants challenged this alleged fact. They challenged also the validity of the alleged oral agreement as being within the statute of frauds; and further challenged its validity because not all persons in interest were parties thereto. The particular claim at this point is that the judgment creditors of Oscar were parties in interest, in that they held liens upon the interest of Oscar, and that the widow's share could not be set off by mutual consent under Section 3369, Code, 1897, unless it be by the consent of "all parties in interest".

The trial court found that the widow had refused to take under the will and had elected to claim her distributive share, and that the 140 acres in question had been allotted to her by the mutual agreement of herself and all of her children, and that she had taken exclusive possession of the land and had incurred expenditures in improving the same. The correctness of this finding is involved in the appeal of the defendants who are named above as appellees.

·I.  The statute of frauds is not involved.  No party to the agreement raises such question.  On the contrary, they all, pleaded and testified to it.  That objection is not available to the defendants who were not parties to the agreement.  If it be true that the participation of the defendants as "parties in interest" was essential to the validity of the agreement, it would be equally true if the agreement had been in writing instead of oral.

1. FRAUDS, STATUTE OF: transfers of land: oral assignment of dower: objection by third parties.

For the purpose of this discussion, it may be assumed also that the agreement between the widow and children for this allotment was irregular for want of the consent of the lien holders.  It was not for that reason wholly void or nugatory.  The interest of these lien holders was a qualified one and was subordinate to the rights of the widow.  Their liens were not upon the real estate of John Shedenhelm, but upon the interest of Oscar Shedenhelm in such estate, whatever such interest might prove to be.  They could not stand in the way of the allotment to the widow of her distributive share.  Granting that the agreement between the widow and children was not binding upon these judgment creditors in any conclusive sense, it was binding upon the parties thereto and was enforceable in equity as against them.  Because the defendants as judgment creditors were not parties thereto, they were entitled to make resistance in this suit and to show any cause against the allotment as affecting their interests which they could have shown if they had been parties to a previous proceeding for the allotment of the widow's share.  They are not in the position of innocent purchasers of property.  Their rights have not been enlarged by the failure to make them parties to the attempted allotment.  Their rights have simply been preserved, and they are entitled now to what they would have been entitled to in a regular proceeding, and to no more.  *Mullin v. White,* 134 Iowa 681; *Yoder v. Kalona Savings Bank,* 142 Iowa 219.

2. DESCENT AND DISTRIBUTION: dower: necessary parties to allotment: creditors of heir.

Unless it be true, as claimed, that the widow had previously elected to take under the will and had thereby waived her right to a distributive share, then upon this record it is too clear for argument that the allotment made to the widow infringed no legal or equitable right of any judgment creditor of Oscar Shedenhelm. The trial court found the value of the 140 acres to be exactly one third of the whole, and this finding is not seriously questioned on this appeal. It has abundant support in the evidence. The selection thus made interferes less with the other provisions of the will than any other selection which could have been made. It operates equally upon all of the children.

3. DESCENT AND DISTRIBUTION: dower: assignment: right of creditors of heir to question.

For the defendants, it is made to appear, however, that the widow acted as one of the executors, her son Robert being the other. All of the personal property was sold and the widow received the balance of the proceeds thereof after payment of debts, and this fact was made to appear in the final report of the executors, which was filed March 18, 1910. It is argued, therefore, that she took this personal property under the provisions of the will. But the testimony shows that the proceeds thus received by her were proceeds from the sale of exempt property to which she would have been entitled under the statute. This circumstance, therefore, does not operate against her.

4. WILLS: right of surviving spouse: election between will and distributive share: evidence.

On the same date, March 18, 1910, she filed with the clerk of the court a paper duly signed by her and purporting to be an election, as follows:

"In the District Court of Iowa County and State of Iowa.

"Comes now Ann C. Shedenhelm, widow of J. N. Shedenhelm, now deceased, and moves the court to set off to me in my own name my legal share of the real estate owned by the said deceased and described in his will, which was probated in said court beginning March 8, 1909, and that all acts

necessary be ordered to carry same into effect.  Ann C. Shed-
enhelm.''

It is contended for defendants that the real meaning
and intent of this paper was to demand her legal share as
·''described in his will''.  Emphasis is placed upon that part
of the paper which ''moves the court to set off to me in my
own name my legal share of the real estate owned by the said
deceased and described in his will''.  When it is noted that all
of the real estate owned by the testator was ''described in
his will'', it quite fully explains all the ambiguity of this
paper.

We think the trial court properly held that this was not
an election to take under the will, but, on the contrary, was
an election to take the distributive share.  In so far, there-
fore, as the decree below confirmed the allotment in favor of
the widow free from any lien or claim of the judgment cred-
itors of Oscar Shedenhelm, it was clearly proper.

II.  We turn now to the appeal of the plaintiffs other
than the widow.  It was the agreement between the widow and
the children, including Oscar, that the children would all
waive any and all claim under the will to the
remainder over of the 140 acres in question.
This arrangement operated equally upon the
children and made the loss of each equal to
that of the other, because of the refusal of the
mother to take under the will.  It was, there-
fore, mutually agreed that none of them
would claim compensation or contribution
from another by reason thereof.  This was the agreement of
Oscar.

5. WILLS: right
of surviving
spouse: as-
signment of
dower: dis-
placing inter-
est of devisee:
right to con-
tribution:
waiver: judg-
ment lien
holders.

It is claimed for the defendants that this agreement was
prejudicial to the defendants as judgment creditors of Oscar
because, under the provisions of Section 3279-a, Code Sup.,
1913, he was entitled to ratable contribution from the other
four children who had each received 40 acres of land under
the will and who had been relieved by the allotment to the

mother from the incumbrance which her rights would otherwise create against their respective tracts. The trial court so held. It was found by the decree that under a ratable contribution Oscar would have been entitled to $844 from the four devisees in question, and that the defendants, as judgment creditors of Oscar, were entitled to have their liens and judgments established as against such interest. It is from this part of the decree that such plaintiffs have appealed. Oscar was insolvent. He had an interest in the real estate devised from his father. It was indefinite in extent, but nevertheless ascertainable. For the purpose of this case, it matters not whether we deem it as a legal or an equitable interest. As between him and his judgment creditors, they had a lien on such interest, whether legal or equitable. It was in the power of the court of equity to ascertain it and to establish the liens of the judgment creditors thereon. On the general proposition that Oscar could not defeat rights of his judgment creditors by waiving his right to contribution from his brothers and sisters, there can be no fair doubt. These appellants, however, urge some particular reasons why the general proposition is not available to the defendants herein, and we will consider these separately.

III.   One of the reasons urged is that there was no actual fraud in the transaction and the trial court so found; that three of the judgment creditors who are defendants herein did not become such until after such agree-

6. DESCENT AND DISTRIBUTION: right of creditors: interest of devisee: entry of judgments: evidence.

ment was made and consummated; that it does not appear that the debt upon which the judgment was entered antedated the agreement; and that therefore their subsequent liens could not have the effect to avoid the provisions of the agreement. The theory of the plaintiffs at this point is that the agreement between the widow and children was entered into immediately after the death of the father, in January, 1909. Of the six judgments involved

herein, the first three were entered in 1906, the next two on February 5, 1910, and the sixth in April, 1910.

We would not be justified upon this record in finding that the agreement relied upon by the defendants was consummated prior to the date of the sixth judgment. It is true that the plaintiffs so testified in terms. It appears, however, from their testimony that the discussion of the agreement extended over an indefinite and considerable period of time. It appears also, as already indicated, that the actual election of the widow was not made until March 18, 1910. It appears further that this oral agreement was subsequently reduced to writing, and that this was done after the commencement of the present action. In such writing, it was recited that the parties thereto were not able to state the exact date when such oral agreement was had, further than to say that it was prior to November, 1912. This agreement was prepared by their attorneys and was carefully and advisedly made. In view, therefore, of this definite admission that they could not fix the date more definitely than it was therein fixed, we ought not to find that it was made prior to April, 1910. We think, therefore, that the trial court properly held that the six judgments were existing liens upon whatever legal or equitable interest Oscar had in the lands pertaining to his father's estate at the time that the oral agreement was made. Such liens therefore could not be defeated by the mere agreement or waiver of the debtor.

IV. It is further urged that the pleadings did not warrant the relief which was granted by the decree. The development of the case was somewhat out of the ordinary. As already indicated, the case began as a mere suit to enjoin, brought by the widow alone, and against the sheriff and one judgment creditor. But like Topsy, the case "jes' growed". All of the beneficiaries of the John Shedenhelm estate having come in as plaintiffs, and five other judgment creditors hav-

7. EXECUTION: auxiliary proceedings: equitable proceedings: failure to serve notice and copy of petition: effect.

ing come in as defendants, the trial court proceeded to administer full equity in the premises. The principal complaint of the appellants is that the pleadings did not conform to the provisions of Sections 4087, 4088 and 4089, Code, 1897. It is urged that no relief was prayed by the defendants, and especially that no compliance was had with Section 4089 in the service of copies of petitions or cross-petitions.

The case involves no race of creditors. None of the defendants claimed any precedence over any other defendants, and the decree treated all defendants as equal in time. Compliance with Section 4089 was therefore not material. The court had full jurisdiction of the parties and of the subject-matter. An examination of the pleadings of the defendants satisfies us that they were sufficient to invoke the relief granted by the decree. This is particularly so as to the last amendment filed by the defendants. Though each defendant filed a separate pleading, each one adopted by reference the pleading of every other. The effect was to confuse rather than to simplify. The allegations and the prayer for relief are somewhat indefinite, but, in the absence of attack in the lower court, we think them quite sufficient.

There is a further reason why the case is not controlled at this point by compliance with the sections of the code referred to. The plaintiffs brought the suit in equity and asked equitable relief. They were bound and therefore deemed to tender equity. The court had power to impose equity upon them as a condition to granting the relief prayed for by them. The court granted injunctional relief quieting the title in the widow to the 140 acres in question. The effect of the decree, however, was to shift the rights of the judgment creditors from the allotment of the widow to the equitable interest of Oscar in the remainder of the real estate. The awarding of such relief was incidental to the relief granted the original plaintiff. To have granted relief to the plaintiff

8. EQUITY: decree: extent of relief: pleadings.

without more would have been less than equity. We are clear that the trial court did not err in the scope of its decree.

V.   It is further urged that the 140 acres allotted to the widow included the homestead of 40 acres; that if the widow had accepted under the will, the interest of Oscar in such homestead could not have been reached by the judgment creditors. Our impressions are not favorable to the general proposition thus put forward. It is enough to say, however, that the question of homestead exemption was not raised either by the pleadings or by the evidence. The question therefore had no consideration from the trial court. There is no evidence directly to the point that the homestead 40 was included in the allotment, although such inference might, perhaps, be fairly drawn. We do not think that it is open to the appellants to raise this question of exemption for the first time on appeal.

9. APPEAL AND ERROR: review: questions first raised on appeal.

On the whole record, we think the decree was a proper one. It will accordingly be—*Affirmed on both appeals.*

LADD, GAYNOR and SALINGER, JJ., concur.