MARY E. WELLS, RESPONDENT, v. ED. L. WELLS ET AL., DEFENDANTS, W. J. KLEPPER, APPELLANT.*

Kansas City Court of Appeals. December 6, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 764, n. 80; Estoppel, 21CJ, p. 1135, n. 83; p. 1173, n. 83, 84; p. 1249, n. 63; Partnership, 30Cyc. p. 504, n. 77; p. 508, n. 86; p. 523, n. 87; p. 526, n. 92; p. 589, n. 11; p. 593, n. 27.

*Culver, Phillip & Voorhees* for respondent.

*Strop & Silverman* for appellant.

BLAND, J.—This is a suit on a promissory note. There was a verdict and judgment in favor of plaintiff in the sum of $979.76 and the defendant, Klepper, has appealed.

The facts show that for sometime prior to August 25, 1922, plaintiff, Mary E. Wells, and defendant, Ed. L. Wells, who were husband and wife, were in partnership in the retail drug business in St. Joseph, Missouri, each owning a one-half interest in the business. Mrs. Wells was a silent partner, the entire business being transacted by her husband in his own name, there being no evidence of any kind from which the public would be led to believe otherwise than that the business was the sole property of the defendant Wells. The defendant Klepper, as well as the public, believed that Wells was the sole owner of the drug business. After Wells and his wife became such partners, the former and the defendant Klepper entered

into a partnership for the manufacture of a hog serum, at first under the name of E. L. Wells Serum Company and afterwards under the name of the Missouri Serum Company. Wells was in the active management of this business and signed for the serum company all of the notes that were executed by it.

Five years after the Wellses became partners in the drug business the drug store was sold by Wells to one Burvenich. This sale was made as though Wells were the sole owner of the store. He received from Burvenich cash, liberty bonds, and a lot, in all amounting in value to $500 and a note in the sum of $1700 secured by a chattel mortgage made to Wells representing the balance of the unpaid purchase price. Wells appropriated the cash, liberty bonds and the proceeds of the sale of the lot to his own use, plaintiff receiving no benefit therefrom. $300 was paid upon the note, which money Wells also retained. Burvenich having failed to meet the payment on the drug store, it was repossessed by Wells and later, on August 25, 1922, sold by Wells, again in his own name, to one Kinder, the former receiving two promissory notes therefor, one in the sum of $1000 and another in the sum of $200, secured by chattel mortgage upon the drug store fixtures. The notes and mortgage were made payable to Wells personally. Plaintiff consented to this transaction and in the way in which the papers were made out.

Sometime between August 25, 1922, and March 12, 1923, an agreement was had between the Wellses to the effect that plaintiff had an interest of $1000 in the Kinder notes and Wells an interest of $200 therein. This division was apparently made because Wells had received at the prior sale of the drug store the sum of $800 and this together with a $200 interest in the Kinder notes would give him $1000 out of the partnership assets, and as the Kinder notes aggregating $1200 constituted the sole assets of the partnership, plaintiff was given an interest of $1000 in them thus making an equal division. The partnership owed no debts and after the sale to Kinder it did not engage in any further business.

Wells owed the Farmers State Bank of Inza, of which Klepper was president, the sum of $360 and without the consent of his wife Wells turned the Kinder notes over to the bank to be held as security for his indebtedness to it. This was Wells' testimony. Klepper testified that the notes were pledged with the bank not only to secure the personal indebtedness of Wells but also to secure the partnership indebtedness of the Missouri Serum Company to the bank which at that time amounted to $3350. On March 12, 1923, Klepper on behalf of the bank and without plaintiff's knowledge, purchased the Kinder notes from Wells and in payment of the purchase price credited the sum of $360 upon Wells's personal indebt

edness and the sum of $840 upon the indebtedness of the Missouri Serum Company to the bank.. At the same time Klepper paid to his father the sum of $840 upon the indebtedness that the serum company owed the latter. Neither the bank nor Klepper at this time knew that plaintiff had any interest in the Kinder notes.

Wells testified that on the afternoon of the next day after the Kinder notes were sold to the bank, he told Klepper that he was going to give plaintiff the note of the Missouri Serum Company in the sum of $840 and explained to him why he was going to do this; that shortly thereafter he gave his wife the note in that sum, which is the note sued on in this case. Plaintiff's note is dated May 25, 1923, and payable one year after date. Klepper denied having any knowledge of the execution of this note until the spring of 1925 when, according to Klepper's testimony, plaintiff demanded of him the payment of the note. Klepper testified that relying upon his belief that Wells was the sole owner of the drug business, he entered into the partnership with him.

The petition is merely a suit upon a promissory note in the sum of $840 and is in the usual form. Defendant Wells filed no answer but in the answer of defendant Klepper it is pleaded that neither he nor his firm executed the note sued upon and that if the note was signed by Wells in the name of the partnership of which defendants were members, such act was wholly without authority; that it was not executed to evidence any debt of said partnership, and that it was wholly without consideration. Defendant Klepper then pleaded that plaintiff permitted her husband to hold himself out as the sole owner of the drug store and that he, Klepper, had entered into his partnership with Wells in reliance upon the latter's apparent ownership of the drug store and in reliance thereon invested money in the business of the serum company and became jointly obligated with Wells for money borrowed by that company; that on March 12, 1923, Wells, being the apparent owner of the Kinder notes, applied the sum of $840 to the indebtedness of the serum company and at the same time Klepper, relying upon the act of Wells, reduced other indebtedness of the partnership in a like amount; that the Kinder notes were received by Wells as a part of the proceeds of the sale of the drug store; that plaintiff had permitted Wells to hold himself out to the world as the sole owner of that store and knew that he was conducting the store in that manner and that if she had any interest in the Kinder notes, she had become estopped and barred from claiming any interest in them as against this defendant. The reply was a general denial.

Appellant insists that his demurrer to the evidence should have been sustained. Preliminary to a discussion of the points raised by appellant, it is necessary to dispose of the controversy as to whether

there is any testimony tending to prove that there was a settlement had between the Wellses prior to the time the bank purchased the Kinder notes and Wells used $840 of the proceeds to pay the indebtedness of the serum company. Appellant contends that there is no such testimony. The record is not as clear as it might be upon this point. There is positive testimony on the part of Wells that there was an agreement had between himself and his wife that she should own a one thousand dollar interest in the Kinder notes and he a two hundred dollar interest therein, but there is no direct testimony as to when this agreement was had. He testified, however, that when Kinder gave the two notes they were owned by his wife and himself. Plaintiff testified that two or three months after the drug store was sold she asked her husband when she was going to get "her money out of this $1200." It will be remembered that after the store was sold to Kinder there was nothing left for the partnership to do except to settle up its affairs and divide the assets and naturally this would have occurred shortly after that time. We think from all the evidence the jury was justified in drawing an inference that there had been an agreement between Wells and wife as to the specific interest they respectively had in the Kinder notes. While appellant argues that the inference is to the contrary, the jury having found for plaintiff we must take all the inferences most favorable to plaintiff and not those favorable to the defendant, in view of the fact that this point has come up on a question of a demurrer to the evidence. In this connection it is insisted that the demurrer to the evidence should have been sustained for the reason that the note sued upon is without consideration because plaintiff had no specific interest in the Kinder notes at the time they were sold and that the $840 of the proceeds from their sale applied upon the indebtedness of the serum company, was merely an asset belonging to the drug store partnership. From what we have said there is no merit in this contention.

It is contended that the demurrer to the evidence should have been sustained for the reason that the conduct of Wells in disposing of the Kinder notes merely constituted Wells a debtor of plaintiff and that a partner cannot pledge the firm's credit for his individual debt and therefore the note sued on was given without any consideration; that in addition to this, Klepper was wholly unadvised of any interest that plaintiff had in the Kinder notes and that the law is that "where one uses the funds of another in paying the indebtedness of a partnership in which the one so using such funds is a member, such other cannot recover from the partnership in any form of action." This is merely another way of stating that the indebtedness, if any, created by Wells in disposing of the Kinder notes and applying $840 of the proceeds to the payment of

the serum company's debts, was an indebtedness from Wells to plaintiff and not from the serum company to the latter.

We think there is no merit in the contentions made. That members of a partnership are personally liable for a tort committed by a partner acting in the scope of the firm's business, is well settled although the other partner or partners may have no knowledge of the wrongful act. [20 R. C. L., p. 914; Construction Co. v. Hayes, 191 Mo. 248.] And that the serum company was liable for the action of Wells in using his wife's money to pay its indebtedness, we think, under the authorities, is beyond dispute. [Bates on Partnership, secs. 478, 479, 480; Manufacturers' Bank v. Gore (Mass.), 8 Amer. Decs. 83; Wolf v. Mills, 56 Ill. 360.] In the cases of Palmer & Co. v. Scott & Co., 68 Ala. 380, one Scott, a member of the partnership of D. M. Scott & Company, was the agent of an insurance company and collected certain money for the latter company which was commingled with the funds of the partnership and used in its general business. Scott made a draft upon his firm for the amount collected in favor of the insurance company and on the same day accepted it on behalf of the firm. In a suit upon the draft it was held that all the partners were liable, the court stating, l. c. 382, 383—

"This was money which, *ex aequo et bono,* belonged to the insurance company. The mercantile firm had no right to, or interest in it. It was money had and received by the mercantile partnership for the use of the rightful owner, the insurance company. This created a legal liability on the partnership, whether McConnel knew it or not. He cannot retain the money, which went into, and was used by the firm, and refuses to account for it, on the ground that he was not informed of its use. [Hogan & Co. v. Reynolds, 8 Ala. 59, and authorities on the briefs of counsel.] Mercantile partnerships are presumed to have authority to borrow money, and each partner is presumed to have authority to sign the partnership name to paper, commercial or otherwise, in evidence or liquidation of the firm's debts."

We think, therefore, that there was ample consideration for the giving of the note sued upon and that Wells did not exceed his power when he gave it on behalf of the firm.

Defendant relies upon the cases of Hardware Co. v. Mayer, 110 Mo. App. 14. The only question before the court in that case was whether the money belonging to plaintiff, a corporation, which was used by one Powell, the defendant's secretary, for the benefit of the partnership of which the corporation was also a member, could be recovered from the partnership by the corporation in any action for money had and received. It was held by this court that one partner cannot sue another but plaintiff should have brought a case

in equity for an accounting. Having held this, which disposed of the case, the court proceeded to discuss the law applicable in case plaintiff had not been a member of defendant firm. In this connection, l. c. 18, 19, the court used some language that seems to lend color to defendant's contention, but we think that the language of the court there used, is susceptible to the construction that in view of the fact that the defendant was a non-trading partnership, Powell, the secretary, had no implied authority to borrow money for it and as the other members of the defendant did not know of his action, defendants were not liable for the money that he used in the business of the defendants. In other words, Powell had neither express or implied authority as a member of defendant partnership to take the action he did and therefore did not bind the partnership. It is only upon this construction of that part of the opinion referred to that we can approve of what was there said. In the case at bar the serum company was a trading partnership and Wells had implied authority to raise money to pay its debts and to issue notes of the partnership as a part of the transaction.

It is insisted that the court erred in permitting an accounting between the Wellses to be taken in this proceeding. It is true that the court permitted plaintiff to show the interest she had in the partnership, the sale of the drug store to Burvenich and Kinder and the agreement concerning the interest that each had in the Kinder notes, but this was not for the purpose of having an accounting in this suit between the Wellses as partners but merely in rebuttal of defendant's testimony. Plaintiff introduced the note and rested. Defendants then took the stand and testified to the effect that the partnership was not indebted to plaintiff in any amount; that plaintiff lent the partnership no money at any time; that it owed nothing to her; that the note was not executed for anything that was owing to plaintiff by the serum company and that company at no time had any business transactions with her; in other words, it was defendants' contention that there was no consideration for the note sued upon. In order to show a consideration plaintiff in rebuttal introduced testimony tending to show the history of the Kinder notes, the proceeds of which were applied in part to the indebtedness of the serum company. There was no accounting had in this suit and we do not construe plaintiff's instruction No. 1 as having the jury take one, but merely requiring it to find facts, the legal effect of which established a consideration for the note sued on.

There was no estoppel either pleaded or proved in this case. The estoppel relied upon was the action of plaintiff in permitting her husband to hold himself out as the sole owner of the drug store.

It was shown that appellant, believing Wells to be such when he entered into partnership with him in the serum business, had invested his (appellant's) money therein and had become jointly obligated with Wells for the company's indebtedness; that plaintiff's conduct in so permitting her husband to hold himself out as the sole owner of the drug store resulted in appellant's believing when Wells paid $840 of the serum company's indebtedness that he was using therefor notes owned solely by Wells, and as the result appellant paid a like sum of the indebtedness of the serum company out of his appellant's own funds.

There are many reasons why there is no estoppel in this case. It is only necessary to state some of them.

"In order to plead an equitable estoppel successfully it is necessary to allege that the acts and representations or conduct constituting the alleged estoppel were done or made with intent that the person pleading the estoppel should act thereon; that the representation was false, if a representation is the basis of the alleged estoppel; that the party against whom the estoppel is claimed was aware of the actual state of facts misrepresented or concealed, or that his conduct was characterized by gross negligence; that the party setting up the estoppel was without knowledge or without convenient and available means of acquiring knowledge of the matters alleged in estoppel; that the party against whom the estoppel is claimed was in a position or relation to the parties which required him to speak or act if the party claiming the estoppel relied on an estoppel arising from silence or acquiescence; that the party claiming the estoppel was misled by the misrepresentations or conduct of the party against whom the estoppel is claimed, and has changed his *status* or done or omitted to do something because of such representation or conduct; and that unless the estoppel is sustained the party setting it up will sustain material injury." [21 C. J. 1249.] [21 C. J. 1135, 1173; Gillen v. Ins. Co., 178 Mo. App. 89, 106; Miller v. Anderson, 19 Mo. App. 71, 74, 75; Burke v. Adams, 80 Mo. 504, 505, 514.]

Assuming that appellant's testimony on this subject is all true, it would only be in the event that the partnership did not have sufficient assets to pay all of its debts and the money that appellant advanced for it, that he could be injured in consequence of having formed a partnership and made himself liable for its indebtedness. There was no pleading or proof offered that the serum company was insolvent nor that appellant could not have reimbursed himself out of the partnership's assets for any debt of the partnership that he did or would be required to pay. When appellant paid on the debt to his father he merely paid on an obligation for which he was personally liable as a member of the partnership. He had the right

to reimburse himself out of the partnership's assets. He was not injured by the substitution of an indebtedness of $840 evidenced by plaintiff's note for a like indebtedness paid on the partnership debt to the bank by Wells. When appellant gave his father $840 he did not become a creditor of Wells, relying upon the latter's being apparently the sole owner of the drug store and therefore owner of the Kinder notes, but the payment of this money to appellant's father merely gave appellant the right, if he was not reimbursed by the partnership, to bring such payment into the partnership account and after the payments of the other debts due by the firm, to be credited therewith in a settlement between the partners. [Lyons v. Murray, 95 Mo. 23.]

There is no evidence that plaintiff knew or had reason to believe that appellant formed or would form the partnership with Wells because he thought Wells was the sole owner of the drug store; nor is there any evidence that plaintiff knew or had any reason to believe that appellant would pay a debt of the serum company because he believed that Wells was the sole owner of the Kinder notes. There could be no estoppel for this reason. [DeBerry v. Wheeler, 128 Mo. 84; Citizens Bank v. Burrus, 178 Mo. 716.] Appellant so far as any matters connected with the merits of this controversy are concerned, had no transaction with Wells as the apparent owner of the drug store. The selling of the Kinder notes was after the drug store partnership had been wound up. The formation of the partnership between appellant and Wells was a matter entirely outside of the drug business, and we fail to see how there could be any connection between what plaintiff permitted her husband to do in reference to the drug business and the merits of this controversy.

From what we have said there was no error in the refusal of defendants' instructions. The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.