FARMERS SAVINGS BANK OF WILLIAMSBURG, Appellee, v.
KATHERINE PUGH et al., Appellants.

MARGARET J. EDWARDS, Appellee, v. KATHERINE PUGH et al.,
Appellants.

**HUSBAND AND WIFE:** Conveyances—Estoppel to Dispute Husband's
1  **Title.** A wife who permits her husband to take and record title to
her lands, and for a long series of years to exercise the usual and
customary indicia of ownership, is estopped to assert her title
against the claims of the husband's creditors who have extended
credit to him in reliance on his apparent title. So held where the
husband, a farmer, became a debtor by reason of having signed
notes as a surety.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Wife as
2 Non-creditor. A husband who takes title to land paid for by the
wife, without any agreement to *repay* the wife, may not later, by a
conveyance to the wife, validly prefer the wife over his creditors on
the theory that the wife was a creditor.

Headnote 1: 27 C. J. p. 646.  Headnote 2: 27 C. J. p. 563.

Headnote 1: 46 L. R. A. (N. S.) 1097; 10 R. C. L. 743.  Headnote 2:
12 R. C. L. 604.

*Appeal from Iowa District Court.*—R. G. POPHAM, Judge.

OCTOBER 25, 1927.

The opinion states the case.—*Affirmed.*

*Walter M. Davis* and *Percy Bordwell,* for appellants.

*Wallace & Claypool* and *P. P. White,* for appellees.

STEVENS, J.—I. This is an action in equity, in the nature of
a creditor's bill, to subject real estate to the payment of a judg-
ment in each of two cases consolidated for trial. The property

1. HUSBAND AND
WIFE: convey-
ances: estoppel
to dispute hus-
band's title.

involved is a tract of 160 acres in Iowa County,
to which William Pugh acquired the legal title
in 1902, and which, on or about April 4, 1924, he
conveyed by warranty deed to his wife and co-
appellant, Katherine Pugh. Both deeds were promptly filed for
record and recorded in the proper office. Judgment was entered
in each of the respective cases on April 15, 1924. They aggre-
gate in amount, with interest and costs, something over $7,000.
The purchase price of the land was paid in part with money re-
ceived by Katherine Pugh from her father, and title, as stated,
taken in the name of her husband. There is a divergence of
opinion between counsel for the respective parties as to whether
the facts and circumstances of this transaction created a result-
ing trust in the land in favor of the wife. In view of the conclu-
sion reached, we shall assume that appellants' contention at this
point is correct, and that William Pugh was possessed only of
the legal title to the farm. With this concession to appellants, we
pass to a brief statement of the material facts.

The deed conveying the legal title to William Pugh was exe-

cuted with the knowledge and consent of his wife. Both parties were, apparently, influenced by the advice of their attorney. The wife testified that the reason she permitted title to be taken in the name of her husband was that she thought it would give him a better standing.

The judgment in each of the consolidated cases was based upon the promissory notes of one Gallagher, which William Pugh signed as surety. The first Katherine Pugh knew that her husband had signed the Gallagher notes was when she received a letter from the appellee bank regarding the Gallagher notes. She then demanded that the legal title be conveyed to her.

Appellants do not claim that there was an agreement between them for the repayment of the money of the wife that was invested in the farm. This being true, she did not, at the time of the conveyance, occupy the position of creditor

2. FRAUDULENT CONVEYANCES: confidential relations: wife as non-creditor.

of her husband. The conveyance cannot, therefore, be sustained upon the theory that her husband, in making the conveyance, rightfully preferred her to other creditors. *Mahaska County v. Whitsel,* 133 Iowa 335; *Daggett, Bassett & Hill Co. v. Bulfer,* 82 Iowa 101; *Jones v. Brandt,* 59 Iowa 332; *Sims v. Moore,* 74 Iowa 497; *Garr, Scott & Co. v. Klein,* 93 Iowa 313. Nor was the deed executed for the purpose of placing the legal title in Katherine Pugh a mere voluntary conveyance, without consideration, and fraudulent as to the existing creditors of her husband. She already possessed the beneficial title to the land. The effect was to enable her to show her ownership of record.

II. Appellees alleged, and have at all times claimed, that they extended credit on the Gallagher notes signed by William Pugh as surety, in reliance upon the record title as evidence of the ownership of the property in William Pugh, and in the belief, and without knowledge to the contrary, that he was in fact the true owner thereof. Their main reliance is upon the estoppel thereby suggested. This contention of appellees' constitutes the vital issue in this case.

The general rule, many times repeated in the decisions of this court, that, if the wife permits title to real estate belonging to her to be taken and held in the name of her husband, under such circumstances that she knew, or ought to know, that others dealing with him would reasonably or naturally, in extending

credit, rely on his apparent ownership of the real estate, she will be estopped to assert her own claim to the property, as against such creditors, is not controverted by appellants. Their contention is in avoidance of the rule, and is that it is not applicable to obligations of suretyship assumed by the husband. *Iseminger v. Criswell,* 98 Iowa 382; *McCormick H. M. Co. v. Perkins,* 135 Iowa 64; *Willey v. Hite,* 175 Iowa 657; *Farmers St. Bank v. Schleisman,* 203 Iowa 585.

Actual or intentional fraud on the part of Katherine Pugh cannot, we think, upon the record, be imputed to her. That she was in good faith in permitting the title to be taken in her husband's name, we think perfectly clear. Final decision of the case does not, however, necessarily turn upon the question of her good or bad faith in the transaction, nor is it necessary to the relief sought by appellees that there should have been actual fraud in the execution of the deed by William Pugh to his wife. Much stress is laid by counsel upon the testimony of Katherine Pugh that she permitted or caused title to be taken in the name of her husband for the purpose of giving him a better standing. No contractual right under which the husband might deal with the land as his own in obtaining credit for any and all purposes is to be implied from this testimony. Were it decisive of the questions before us, we would be inclined to hold that it was the intention of the wife to assist her husband to obtain a better standing in the community for the purpose of carrying on the business of operating and managing the farm and of obtaining the necessary credit for that purpose. The inevitable conclusion in this case does not rest upon a limitation to be implied from the testimony of Katherine Pugh as to her purpose in the matter. She permitted the legal title to remain in her husband for more than twenty years. The record of titles in the county recorder's office did not disclose any prior interest in the land until, so far as she was concerned, the deed executed in 1924 was filed for record. During that long period of time, William Pugh had managed the business in his own name, and, so far as the record shows, none of appellees knew anything of the claim now asserted by Mrs. Pugh. Her husband, with her knowledge and consent, was possessed of the indicia of title to the land. Some reliance is placed by appellants upon the record of an affidavit signed and sworn to by Katherine Pugh. The affidavit was exe-

cuted for the apparent purpose of making a showing of record that a $3,100 mortgage, given by appellants in 1902, at the time of the purchase of the land in question, was executed to secure a note of that sum to Henry Smith, the father of the affiant; that Henry Smith died intestate, February 17, 1907; and that the persons named therein are his sole heirs at law. Constructive notice of this affidavit did not extend beyond the recitals therein and such inquiry as might be suggested thereby. There is nothing in the affidavit from which one having actual knowledge thereof could imply that William Pugh was not the owner of the land, or that it had been purchased with money received from Henry Smith or from his estate. The mortgage described was released of record by appellant and the other heirs at law named in the affidavit. The purpose of the affidavit was to show such matters of record as would make clear the right of the heirs at law of Henry Smith to release the instrument.

Many cases are cited by counsel for appellants, and pressed upon us with vigor. None of the decisions of this court support their contention that Katherine Pugh did not in fact, and was not bound to, anticipate that her husband would become surety of Gallagher or anyone else, or assume obligations inconsistent with her claim that he held title only for the purpose of enabling him to operate and manage the farm and to secure the credit necessary for the purpose.

The general rule as to the right of existing creditors is recognized and followed in *State Bank v. Wolford*, 178 Iowa 89. The discussion of the opinion in that case upon which appellant relies is with reference to subsequent creditors and their rights in a voluntary conveyance by the husband to the wife of his property. We held that as to such creditors the placing of the mere legal title by the husband in the wife was not fraudulent. If the language of the opinion goes further, it goes beyond the necessities of the case.

In *Moore v. Scruggs*, 131 Iowa 692, the title to land purchased with the money of, and for, her mother was taken in the name of a daughter, without the former's knowledge or consent. The action was to enjoin the sale of the property upon a judgment rendered against the daughter. The opinion does not make clear whether the mother knew, before credit was extended to her

daughter, that the title was in the latter's name. Under the facts of this case, the sale was properly enjoined.

The evidence in *Hoag & Steere v. Martin*, 80 Iowa 714, was merely held insufficient to sustain the plea of estoppel interposed against the wife. *Payne v. Wilson*, 76 Iowa 377, involved a conveyance made by the husband in satisfaction of a bona-fide indebtedness to the wife. *Crouse v. Morse*, 49 Iowa 382, involved a controversy in which the wife claimed to be the creditor of her husband, and the conveyance was sustained upon this ground. *Bennet v. Strait*, 63 Iowa 620, goes no further than to hold that "* * * the law of estoppel has no application from the *mere* fact of the husband's holding the title when the debt was contracted * * *." *Jordan v. Sharp*, 204 Iowa 11, is quite like *Moore v. Rawlings*, 137 Iowa 284. In each of these cases, the respective creditors were purchasers from the holders of negotiable promissory notes which they acquired without having relied upon the ownership by the husband of real estate subsequently conveyed to his wife. So far as the general rules referred to or discussed in the foregoing cases are concerned, they are not in dispute.

Three cases cited by appellants from other jurisdictions require consideration. *McAdow v. Hassard*, 58 Kan. 171, recognizes the general rule to which we have referred, but, upon the facts of that case, a conveyance by the husband to the wife was sustained. *Marston v. Dresen*, 85 Wis. 530 (55 N. W. 896), tends to support appellant's contention. The rule in Wisconsin in such cases is apparently much broader in favor of the wife than the decisions of this court have recognized. The *Marston* case is cited in the dissenting opinion in *Goldberg v. Parker*, 87 Conn. 99 (87 Atl. 555). The majority of the court in that case announced the rule prevailing in this state.

Commenting upon *Marston v. Dresen,* supra, and other similar cases, the Supreme Court of Alabama, in *Reynolds Co. v. Reynolds,* 190 Ala. 468 (67 So. 293), said:

"A careful analysis of the above cases will clearly show that they are really founded upon the common-law principle—changed by statute in this state—that: 'A conveyance by a debtor of his own property in discharge of a debt; though taken by the grantee with the knowledge that it is intended to hinder, delay, or defraud other creditors, is good as against the latter,

unless the grantee takes more than the amount of his debt, either
for himself or for the debtor or others.' "

In the course of the opinion in *DeBerry v. Wheeler,* 128 Mo.
84, the court stated the general rule of estoppel in such cases, to
which point it was cited in *Farmers St. Bank v. Schleisman,*
supra. The court said:

"It must be conceded that Mrs. Wheeler, by permitting the
record title to the land to remain in her husband, represented to
the public that her husband was the owner of it. Yet in this
alone no one could be defrauded. The fraud, and consequent
estoppel, would only exist when she knew, or from all the circum-
stances ought to have known, that others, relying upon what she
permitted the record to tell them, were dealing, or might deal,
with the husband in such a manner as to cause them to alter their
previous condition, to their injury. As a matter of fact, Mrs.
Wheeler did not know that her husband was being taken as surety
on the faith of his ownership of the land. This transaction was,
moreover, entirely out of the course of any business in which he
was engaged, and no inference can, therefore, be drawn that she
had such knowledge. We consequently do not think that the
doctrine of estoppel applies, under the circumstances of this
case."

The holding of the *DeBerry* case is still the law, and has
been cited with approval by the Missouri Supreme Court in at
least the following cases: *Leidner Undertaking Co. v. Vogel*
(Mo. App.), 251 S. W. 428; *Willock Realty & Loan Co. v. Smith*
(Mo. App.), 253 S. W. 45; *Ellis v. Thompson* (Mo.), 264 S. W.
804; *Grafeman Dairy Co. v. Northwestern Bank,* 290 Mo. 311
(235 S. W. 435); *Wells v. Wells* (Mo. App.), 288 S. W. 950;
*Phipps v. Markin* (Mo. App.), 227 S. W. 870. In this connec-
tion, *Wells v. Wells,* supra, will be found both interesting and
instructive. Whatever may be said of the holding of the above
cases, we think it clear that the facts of this case cannot be so
applied as to properly invoke it.

Equitable estoppel does not arise in such cases merely be-
cause the wife knew of the transaction involved and permitted
her husband, without protest or notice to the other party, to pro-
ceed to his injury, or because she may have had reason to sup-
pose that he would not act to her prejudice. It is the rule in this
state that the taking and holding of the title of the wife's prop-

erty in the name of the husband, the deed being duly recorded, and the exercise of the usual and customary indicia of ownership for a long series of years, together with the acquiescence therein by the wife, estop her, when the claims of creditors who have extended credit to him in reliance thereon are involved, from setting up her own equitable title against them. This is the rule in most jurisdictions. Any other rule would open the way to the husband to perpetrate the grossest fraud upon others.

The decree of the court below, subjecting the property in question to the payment of the judgments of appellees, is affirmed.—*Affirmed.*

EVANS, C. J., and DE GRAFF, KINDIG, and WAGNER, JJ., concur.