D. W. BATES, Superintendent of Banking, Receiver, Substituted Plaintiff, Appellee, v. NICHOLAS V. MAIERS et al., Appellants.

No. 43863.

APRIL 9, 1937.

184

██ ██ 

Max H. Jenk and Gilloon & Glenn, for appellee.

Smith & O'Connor, for appellants.

ANDERSON, J.—In February, 1934, the Farmers State Bank of Earlville, Iowa, commenced this action in the district court of Dubuque County, Iowa, alleging that in January, 1934, it obtained judgment against the defendant, Nick V. Maiers, for approximately $6,000; that execution had been returned unsatisfied; that a conveyance of a tract of land consisting of 225 acres in Dubuque County, Iowa, made by the defendant, Nick V. Maiers, to his wife and co-defendant, Anna Maiers, on the 14th day of August, 1931, was voluntary, without consideration, and was made for the purpose of hindering, delaying, and defrauding the creditors of Nick V. Maiers, and praying that such conveyance be adjudicated as fraudulent and void, and that plaintiff's judgment be satisfied out of the land thus conveyed. On November 1, 1935, the plaintiff bank, having become insolvent, a receiver was appointed therefor, and such receiver has been substituted as plaintiff in the action. The defendants by way of answer to plaintiff's petition denied generally and specifically the allegations of the petition, except certain matters which were admitted by the answer, and further alleged that the conveyance in question was made in good faith and for a valuable consideration, and not for the purpose of hindering, delaying, or defrauding the plaintiff. The plaintiff filed a reply to the defendants' answer reciting that the defendant, Nick V. Maiers, acquired title to a part of the land in question (113 acres) in February, 1913, and that he acquired title to the remaining part (112 acres) on the 1st day of March, 1917, and retained the title to said land until August 14, 1931, when he executed the conveyances in controversy to his wife; and further that during all of the time that the record title rested in Nick V. Maiers he operated the farm and exercised management and control and to all intents and purposes was the apparent absolute owner thereof; and that relying on such apparent ownership the Bank of Earlville on March 4, 1931, extended credit to him in the sum of $5,000, being the same indebtedness upon which the judgment herein involved was

rendered. The reply further set up an estoppel as against the defendant, Anna Maiers, and alleged that she knew or should have known that credit was being extended to her husband by the bank because of its reliance on the apparent ownership of the real estate by Nick V. Maiers, and that by reason thereof she is estopped from asserting ownership as against the plaintiff. This reply was filed at the time the case went to trial. A motion to strike the reply was then interposed by the defendants on the ground that it set up a new and distinct cause of action being in no way related to plaintiff's original cause of action and not a proper subject to be plead in a reply. More than a week after the close of the trial the plaintiff filed an amendment to his petition again setting up the facts which he claims constituted an estoppel as against the defendant, Anna Maiers. Resistance and objection was filed to this amendment by the defendants on the ground that it was filed too late; pleads new causes of action; materially changes the issues upon which the case was tried; does not conform to the proof, and was not required by any new or unsuspected development in the trial of the case; that the amendment was subject to motion, and raised a new issue to which the defendants were entitled to plead and make defense, and defendants ask that the proposed amendment be stricken. Neither the motion to strike the reply nor the motion to strike the proposed amendment were ruled upon by the court until July 9, 1936, when the trial court entered a final ruling and decree on the merits.

It is a serious question whether an estoppel can be pleaded as was attempted in this case. The major part of the briefs and arguments of both parties on this appeal is directed to this question; however, in our disposition of the case, we find it unnecessary to determine the question.

The record in this case shows that 113 acres of the 225 acres here involved were purchased by the defendant, Nick V. Maiers, in 1913, for $16,750, and that of that purchase price the defendant, Anna Maiers, contributed $7,000, most of which was borrowed from her father. The other tract consisting of 112 acres was purchased in 1914, from the father of the defendant, Anna Maiers, for $14,000. This contract of purchase was between the father of Anna Maiers and Anna Maiers and Nick V. Maiers. A short time after the making of the contract the father died, and pursuant to the contract of purchase a deed was made by the

executors of the father's estate to the defendant, Nick V. Maiers. Anna Maiers later discovered the deed was made to her husband alone and she never consented that the transaction be closed in that manner. A few months later her entire inheritance from her father's estate, consisting of approximately $15,000, was appropriated by the executors of her father's estate and applied to the payment of the purchase price of the land. She testifies that, "Instead of getting my share in the estate I got back notes aggregating $14,421. I also received a gift from my father during his lifetime of $3,000, which went into another farm, and which was later sold and the proceeds invested in the land I now own, and the improvements thereon. I never received any part of my father's estate. No part of it was paid to me personally. Not a penny. At the time the deed was made out to Nick from the executors of my father's estate there was no conversation with me in regard to how it would be made out, and neither was there any conversation in regard to it before my share of the estate was applied. After the deal with the executors was closed by my husband I received the purchase money notes and other papers and put them in a bank box of which I had the key, and told Nick that I wanted those papers saved."

The combined tract of 225 acres was occupied by the defendants as their homestead during all of the years from the times of its acquisition in 1913 and 1917. Anna Maiers further testified that the deeds from her husband to her in August, 1931, were made pursuant to demands made upon her husband by her; and that the purpose of making the conveyances was to secure the money she had put in the land; and that the conveyances were not made for the purpose of hindering, delaying, or defrauding any other creditor of her husband. After the conveyances were made to Anna Maiers a loan aggregating $13,000 was made from the Federal Land Bank and this money was used to pay a prior mortgage of approximately $11,000 upon the land conveyed. She testifies that she knew, at the time of the conveyances to her, of some other debts owed by her husband, but she says, "I knew also that he owed me about $18,000, and this was not a gift to my husband. I trusted him." Her testimony was corroborated by her husband and, to some extent, by a Mr. Offerman, an attorney who prepared the conveyances in question, and there is absolutely no testimony contradicting the testimony we have referred to in any way. We conclude that the evidence

was such as to create the fair inference that the money belonging to the wife which the husband received and used was not mere gifts or gratuities, but that the wife understood at all times that the husband owed her the aggregate amount of such money and that she expected him to pay her or in some way protect or secure her.

The case in this respect is very similar to the case of Clark v. Clark, 209 Iowa 1179, 1181, 229 N. W. 816, 817. In the Clark case we said:

"The record evidence before us, although it discloses some claims antedating the instant transaction by many years, does tend to establish that an agreement and understanding existed between the parties that the wife's property and moneys that were turned over by her to the husband for his use were given and received with the expectation that the husband should repay same to his wife. Thereby she became the creditor of her husband. In order to set aside this conveyance on the ground that it is fraudulent as against creditors, it must be shown that it was made with the intent to hinder and delay creditors."

We further held in that case that a creditor acting in good faith may take security or secure payment of his debt although he knows that there are other creditors whose claims will thereby be defeated. And it has also been held, and is a well established rule in this state, that a debtor is entitled to prefer any one of his creditors though it be to the disadvantage of his other creditors. Grant v. Cherry, 199 Iowa 164, 201 N. W. 588; Carlisle v. Milliman, 199 Iowa 949, 952, 203 N. W. 268, 270. In the last cited case we said:

"The wife is certainly entitled to as much consideration as other creditors would be in the securing or payment of debts due from her husband."

In the Clark case and other cited cases the claim of the wife was barred by the statute of limitations, but it was held by this court that that was a defense which the debtor could waive, and also, that the existence of such a fact does not make the conveyance either voluntary or fraudulent.

A further quotation from the Clark case is pertinent:

"We are here dealing with transactions between husband

and wife. If this husband was in fact honestly indebted to his wife, and the conveyance and transfer were made, received, and accepted in good faith, in payment or satisfaction of such indebtedness, and the consideration was not grossly inadequate, it may be said that the conveyance and transfer were not fraudulent, and will not be set aside, nor the property subjected to the creditors of the husband, even though it operates to hinder or prevent the collection of their claims. Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360.''

In the cited case all of the real estate of the husband consisting of 305 acres, together with all personal property upon the farm, was conveyed and transferred to the wife, and at the time of such transfers there was a judgment against the husband of practically $18,000, and many other debts. And in that case the court sustained the transfers to the wife.

It must be borne in mind that at the time of the transfers to the wife in the instant case the land was incumbered with a mortgage approximating $11,000 or $12,000; that improvements on the land were of the estimated value of $8,000 to $10,000, and these were upon the 40 acres that would be exempt to the defendants as their homestead. The estimated value of the farm as a whole varied from $75 to $150 an acre, but the plaintiff's witness, who fixed a higher value, said that the farm was worth as much in 1931 as it ever was. Such testimony is not at all impressive. It is a matter of common knowledge that in 1931 land values were at a very low ebb. In fact lower than they had been for fifteen or twenty years. These valuations were upon the farm as a whole, and if the 40 acres of homestead with $8,000 or $10,-000 of buildings and improvements thereon were deducted from the whole acreage it would leave 185 acres which probably did not exceed in value, under this record, $75 per acre, or a total of $13,875. Deducting from this amount the amount of the existing incumbrance of $11,000 or $12,000 and it leaves very little, if any, equity which would have been available to the creditors of the husband had these conveyances not been made, and a very small return to the wife for the amount of money which her husband owed her.

Some attention is paid by the appellees to the fact that at the time the transfers in this case were made to the wife, the husband also conveyed another tract of 229 acres in Delaware

County to a son, and that after these transfers were made the husband owned no property of any kind subject to execution. In reference to the farm deeded the son the record shows, without dispute, that it was subject to mortgages of $20,500, and that the value of this land at that time did not exceed $50 per acre. That there was no equity in the 229 acres deeded to the son is also shown by the fact that the mortgages were later foreclosed and the son divested of the title thereby.

Some attention should be paid to the character of the indebtedness held by the Bank of Earlville against the defendant, Nick V. Maiers. This indebtedness arose in 1924, by reason of the purchase by Maiers of the 229 acres later deeded to his son. It appears that the title to this land was at that time in one Clute, a resident of North Dakota. The land was subject to first and second mortgages aggregating $20,500. The bank also held a third mortgage against the 229 acres for $6,000, and there was still another mortgage against the land approximating $7,000. At the time of the purchase of the land by Maiers he gave a note to the bank of approximately $6,000, unsecured. Some $1,400 was paid upon this note at different times and it was several times renewed. The balance due upon this note however, or upon its renewals, was the basis for plaintiff's judgment against Nick V. Maiers in the sum of approximately $6,000 which was rendered on the 20th day of January, 1934. The examiner in charge under the receiver of the bank was a witness and testified that as far as the books of the bank show, and so far as he was able to learn, none of the proceeds of the sale of this 229 acres ever went to Clute, the title holder. The inference is that the bank simply exchanged their $6,000 third or fourth mortgage on the 229 acres for the unsecured note of Mr. Maiers. At the time this $6,000 note was given to the bank, the bank attempted to get Mrs. Anna Maiers' signature thereto, but she refused to sign the note and told the bank officers that all of her inheritance, amounting to something like $18,000 was invested in the farm upon which they were levying, and that she was not going to do anything that would jeopardize that money. So that, we cannot conclude that the bank extended the credit to the husband, represented by the $6,000 note, on any apparent ownership of the land here in question by Nick V. Maiers.

It is clear from this record that either Mrs. Maiers was a creditor of her husband, or that he held the legal title to the land

involved in trust for her, at least to the extent of her money that he had used in the purchase thereof.

We said in the case of Crenshaw v. Halvorson, 183 Iowa 148, 151, 165 N. W. 360, 361:

"Business dealings between husband and wife are not apt to be expressed in exact and formal terms. It is enough if their conduct and language with respect to the subject matter be such as to raise the fair inference that the money or property was not received by the husband as a mere gift or gratuity, but with the expectation on the part of both that, at some time, he will account or make payment therefor to her."

The appellees rest much of their contention upon the Farmers Savings Bank v. Pugh, 204 Iowa 580, 586, 215 N. W. 652, 655, but we do not think that case is conclusive as to the question presented in the record under consideration. In the Pugh case it is true that many of the facts are similar to the facts in the case under consideration. However, there was no indication in the record in that case or inference that would support the wife's position and contention that she was a creditor of her husband. And that case was decided wholly upon the proposition that under the record the wife was estopped from disputing the husband's title to the land. And furthermore, in that case there was proof that the credit was extended to the husband in reliance upon his holding the record title to the land in question, while in the case at bar there is absolutely no evidence even tending to show that the credit extended by the Bank of Earlville to Nick V. Maiers was upon reliance of anything. Again in that case the record showed that the credit was extended not only on the apparent ownership of the land in question, but without knowledge of any other adverse interest therein.

In the Pugh case we quoted with approval DeBerry v. Wheeler, 128 Mo. 84, 30 S. W. 338, 49 Am. St. Rep. 538, as follows:

"It must be conceded that Mrs. Wheeler, by permitting the record title to the land to remain in her husband, represented to the public that her husband was the owner of it. Yet in this alone no one could be defrauded. The fraud, and consequent estoppel, would only exist when she knew, or from all the circumstances ought to have known, that others, relying upon what

she permitted the record to tell them, were dealing, or might deal, with the husband in such a manner as to cause them to alter their previous condition, to their injury."

There is no evidence in the instant case that the bank changed its position to its injury in the taking of the $6,000 unsecured note from Nick V. Maiers, or upon any reliance of his apparent ownership of the land in question. It should be borne in mind in this connection that the transfer to the wife was made approximately three years before judgment was obtained upon the balance due upon the $6,000 note.

As we have heretofore indicated, the court's ruling finding the issues for the plaintiff was based solely upon the question of estoppel. Without determining whether the estoppel was properly in the case, we are of the opinion that under this record such contention should not prevail. We are further of the opinion that the record shows a valid indebtedness due from the husband to the wife; that the conveyances were taken by the wife in good faith and for an adequate consideration, and not for the purpose of hindering, delaying, or defrauding the plaintiff or any other creditor. Any other determination cannot be supported by this record. In any event, we cannot see how plaintiff can realize anything from the equity in the land involved even though the conveyances were set aside. It could only result in loss to the defendant, Anna Maiers, of any possibility of saving any of her patrimony, and without any discoverable benefit to the plaintiff.

It follows, and we conclude that the trial court erred in decreeing the conveyance invalid, and the case will be reversed and remanded with directions to enter an order dismissing plaintiff's petition.—Reversed.

RICHARDS, C. J., and HAMILTON, KINTZINGER, PARSONS, STIGER, and DONEGAN, JJ., concur.