FLORENCE NESMITH, BIRDIE VEBER, and NORA BRALEY, Appellees v. JOHN PLATT ET AL., and MARY R. SMITH, Appellants.

**Husband and wife:** ANTENUPTIAL SETTLEMENT IN LIEU OF DOWER.
1  The statutory interest of a wife in her husband's estate may be barred by the provisions of an antenuptial contract; as

where by mutual agreement it is recited that she had assigned and delivered to him specific personal property for his life use, and that upon her death he should pay the agreed value thereof to her children by a former marriage, and that if she survive him the said sum together with an additional amount should be paid to her in lieu of any interest or dower in his estate.

**Same:** CONSIDERATION. The marriage of parties, each owning property, is an adequate consideration to support their mutual antenuptial contract settling their respective property rights after marriage.

**Dower:** WHEN BARRED. The acceptance and receipt by a widow of a specific sum from her husband's estate "in full payment and settlement of all my rights and interest in said estate" amounts to a settlement and will bar and estop her from claiming any further interest.

**Antenuptial contract:** VARIANCE BY PAROL. In the absence of a plea of fraud or alteration in the terms of an antenuptial settlement of property rights of the parties, parol evidence that the agreement was made solely for the purpose of settling the husband's rights in his wife's property is inadmissible.

**Fraud:** BURDEN OF PROOF. One alleging that an instrument to which he is a party was procured by fraud and undue influence has the burden on that issue.

**Same:** ANTENUPTIAL AGREEMENT. A widow seeking relief against a fully executed antenuptial contract with her husband, settling her interest in his estate and the terms and conditions upon which she is to be repaid for property turned over to him, has the burden of showing some defect in the contract which will defeat the same.

**Same:** EVIDENCE: TRUST RELATION. Where the wife had $4,000 and the husband $30,000 at the time of their marriage, an antenuptial contract providing that upon the wife's death the husband should pay to her children by a former marriage the amount of her property, which she turned over to him, and in case she outlived him she should receive the same amount from his estate and $1,000 in addition in lieu of her dower interest, both parties being *compos mentis* and no fraud appearing, was not so inequitable as to afford any evidence of fraud; nor did the parties occupy any such relation of trust as to call for affirmative proof of the fairness of the agreement when contested by the wife.

**Antenuptial contract:** RELEASE OF DOWER: CONSIDERATION. Even though the husband did not receive all of the wife's estate under

the contract, still the agreement to pay the additional $1,000 and the consideration of marriage was sufficient consideration to support the wife's promise not to claim any dower in his estate.

*Appeal from Jasper District Court.*— HON. BYRON W. PRESTON, Judge.

SATURDAY, FEBRUARY 15, 1908.

SUIT in equity to quiet plaintiffs' title to certain real estate.    Decree for plaintiffs, and defendant Mary R. Smith appeals.— *Affirmed.*

*J. C. Hawkins* and *J. W. Burke,* for appellant.

*O. P. Myers,* for appellees.

DEEMER, J.— Plaintiffs are the children and heirs at law of J. R. Smith, deceased, who died intestate August 17, 1905, seised of the property in controversy. Defendant Mary R. Smith is the widow of J. R. Smith, deceased, and as such claims a share of his property. Plaintiffs says that defendant widow is not entitled to any part of her deceased husband's estate because of an antenuptial contract entered into before her marriage to deceased, whereby and by reason of her subsequent contracts and settlements she released any share in her husband's estate, and is barred and estopped from claiming any interest therein. Defendant admits the contract, but says that it was not made to release her dower or as a settlement, but had reference simply to her property and to her husband's rights therein after marriage, and that it was procured by fraud or executed by mistake. As to the settlement after the death of her husband, she avers that it was procured by fraud and undue influence. Defendant also pleaded that the antenuptial contract was unfair and inequitable, and should not be enforced against her. J. R. Smith and Mary Gardner, now Smith, were married July

24, 1904. At that time he was about fifty-six years old and she was fifty-two. Both had previously been married, and each had children by these former marriages. Mrs. Gardner had about $4,000 in notes and cash, and Smith was the owner of an estate worth $30,000. Just prior to their marriage, they entered into the following antenuptial contract:

This antenuptial contract and agreement made and entered into this 23rd day of July, A. D. 1904, by and between Mary R. Gardner of Jasper county, Iowa, and J. R. Smith of Jasper county, Iowa, witnesseth: That on the 24th day of July, A. D. 1904, the said Mary R. Gardner is to marry and become the lawful wife of the said J. R. Smith, and she has this day assigned and delivered to the said J. R. Smith, notes and cash to the amount of four thousand dollars ($4,000.00) for his use during her lifetime, and at her death the said J. R. Smith agrees to pay to the children of Mary R. Gardner, by a former marriage, four thousand dollars ($4,000.00). In case the said J. R. Smith should die first, leaving the said Mary R. Gardner his widow, then she shall receive from the estate of the said J. R. Smith, the sum of $5,000.00 (the four thousand dollars [$4,000.00] advanced to him this date, and one thousand [$1,000.00] additional) in lieu of any interest or dower in the estate of said J. R. Smith. In witness hereof we have hereunto set our hands this 23rd of July, A. D. 1904. [Signed] Mary R. Gardner. [Signed] J. R. Smith.

Smith lived but a little over a year after the marriage, and just before his death he called his wife into his presence, and before others the matter of this contract was gone over, and Mrs. Smith expressed herself as satisfied therewith. After the death of J. R. Smith, his widow, Mary, filed claims against the estate, and thereafter entered into a settlement with the proper representatives of the estate, whereby she received something like $550 more than was provided for her by the antenuptial contract. At that time she signed the following paper:

I, Mary R. Smith, hereby agree to settle with the heirs of the late J. R. Smith, receiving as my share of his estate the amount as stated in an antenuptial agreement made with him on the 23rd day of July, 1904, and I am to receive additional $225.00 cash for necessary expenses, the use of the home in which we lived for one year, if I desire to live in it. I am to have the horse named ' Charley' to use during my lifetime and at my death said horse shall be delivered to the children of J. R. Smith. I agree to keep said horse in my possession, and not to dispose of the same. I am to receive amount of interest and principal that has been paid on the F. E. Sharp mortgage and interest on loan that was turned over to J. R. Smith deceased for his use. I agree to accept as per above in lieu of any dower or distributive share in the said estate of J. R. Smith deceased. Signed this 19th day of August, 1905. [Signed] Mary R. Smith. We the undersigned children of said J. R. Smith agree that Mary R. Smith shall be paid as set forth in the above by the administrator of the said estate as soon as the same can be done after his appointment. Signed this 19th day of August, 1905. [Signed] Florence Nesmith. Birdie Veber. Nora Braley.

Her claim against the estate was filed September 7, 1905, and was for $5,191.67, being the amount alleged to be due her under the antenuptial contract. This was allowed in full by the administrator of the Smith estate. The amount of this claim was paid to the widow, and she gave the following receipt therefor:

$5,416.67. Newton, Iowa, Sept. 6th, 1905. Received of Charles J. Irish, administrator of the estate of J. R. Smith, Dec'd, the sum of five thousand and four hundred and sixteen and 67/100 dollars, in full of my claim against said estate on said antenuptial agreement, and I hereby waive notice of the final report of said administrator and consent to his final discharge without notice to me, same being in full payment of my said claim and also $225.00 allowance and being in full payment and settlement of all my rights and interest in said estate. [Signed] Mary R. Smith.

These transactions are relied upon as a bar to defendants' claim for distributive share. We shall first look to the papers themselves, viewed in the light of the facts above recited, and then to the claims made for appellant in the light of the testimony which it is claimed should be considered on the issues joined. Appellant's first contention is that the antenuptial contract or agreement has no reference to her claim to her husband's property, but only to his rights in hers; that the only consideration for her prospective husband's agreement was the receipt of her property; and that, in so far as it relates to any interest which she might obtain in her husband's estate, it is without consideration and void. Going, now, to the agreement itself, it will be observed that it has express reference, not only to Mrs. Gardner's property which was to be turned over to Smith, but to her dower interest in Smith's estate. It was provided that, in the event Mrs. Gardner died first, Smith was to pay to her children $4,000. In that event, she, of course, would have no dower interest or right to a distributive share. In the event he died first, then Mrs. Gardner was to receive from his estate the sum of $5,000, $4,000 being the amount advanced him by her and $1,000 additional; this additional sum being in lieu of interest or dower in the estate of J. R. Smith. The consideration for this promise was not only the receipt of the $4,000, but the agreement to pay the additional $1,000.

*1. HUSBAND AND WIFE: antenuptial settlement in lieu of dower.*

Moreover, the marriage was a mutual and adequate consideration for the promises made by the respective parties, one which the law has denominated the highest known to the law. Each of the parties had property at the time of the marriage, and the agreement was manifestly to settle the rights of the other thereto growing out of the proposed marriage relation. In the event the husband survived the wife, he was to have no claim to her money or property, but was

*2. SAME: consideration.*

to repay the entire amount thereof to the wife's children by a former marriage; he having the use thereof without interest during the life of his wife. But he also relinquished his right to claim one-third thereof. In the event he died first, his estate was to repay her the $4,000 and give her an additional sum of $1,000 in lieu of interest or dower in the estate of Smith. Surely there was a sufficient consideration for these mutual promises, and the agreement or contract on its face bars dower or distributive share. That the widow so understood is clear from the receipt over date of August 19, 1905, which she signed.

Moreover, this receipt was also a contract of settlement between the parties after the death of J. R. Smith for the purpose of settling their respective interests in and to his estate; and thereunder the defendant agreed to accept a certain sum in lieu of her distributive share. This it seems included more than she was given by the antenuptial contract, and on its face expressly bars dower. Upon the strength of this agreement, the estate of Smith was settled and closed. Upon the face of the papers it is clear that defendant is barred and estopped from claiming anything out of the estate of her deceased husband.

**3. DOWER: when barred.**

But defendant insists that the antenuptial agreement was not made for the purpose of settling the matter as to the right that each should have in the property of the other, but solely for the purpose of defining J. R. Smith's rights to his prospective wife's property; and she introduced and attempted by parol evidence to establish that fact. In the absence of a plea of fraud in the settlement or of alteration in its terms, such testimony was inadmissible; but, even were it admissible under the plea of fraud, we think defendant has failed to establish her claim in this regard.

**4. ANTENUPTIAL CONTRACT: variance by parol.**

Defendant also contends that the other papers which we have set out were obtained by fraud and undue influence.

The burden was upon her to show these facts; and in this

5. FRAUD: burden of proof.

we think she has signally failed. The clear preponderance of the testimony is to the contrary.

Again, it is argued that the marriage settlement was and is inequitable and unfair, and that a court of equity should not specifically enforce the same. This is not an

6. SAME: antenuptial agreement.

action to enforce specific performance. The contracts have already been performed, and defendant Smith has been given more than her antenuptial contract called for. Defendant is seeking relief against her executed and fully performed contracts which extinguish her rights in and to the property of the estate, and it is for her to show some defects therein which will defeat the same. *Naill v. Maurer,* 25 Md. 532.

Moreover, the contracts were not so inequitable or unconscionable as to afford any evidence of fraud, and, in the light of the surrounding circumstances, were not such con-

7. SAME: evidence: trust relation.

tracts as a court of equity would refuse to enforce. The parties were *compos mentis.* They were dealing with reference to the property that each held, and there was no misrepresentation or fraud upon the part of J. R. Smith, nor did any such relations of trust and confidence exist between them as to call for affirmative proof from plaintiffs of their fairness. Such contracts as these have many times been enforced. *Jacobs v. Jacobs,* 42 Iowa, 600; *Kohl v. Frederick,* 115 Iowa, 517; *In re Devoe's Estate,* 113 Iowa, 4. It is true that at the time of the marriage J. R. Smith had something like $30,000 worth of property and appellant $4,000; but they were each between fifty and sixty years of age, and each had children of former marriages whose rights were to be preserved, or whose inheritable privileges were very proper to be protected. There were no misrepresentations regarding the amount of property that either of the contracting parties had, and no reason is shown for setting aside the contract

which appears to have been deliberately made.    See *In re Devoe's Estate, supra.*    That the contract was based upon a sufficient consideration, see *York v. Ferner,* 59 Iowa, 487; *Fisher v. Koontz,* 110 Iowa, 498; *McNutt v. McNutt,* 116 Ind. 545 (19 N. E. 115, 2 L. R. A. 372).

This meets the claim by appellant that, as J. R. Smith never received the money and property belonging to his wife, the appellant, there was no consideration for the contract.

8. ANTENUPTIAL CONTRACT: release of dower: consideration. However, it is in evidence that J. R. Smith received part of the money and property belonging to his wife, the appellant.    But, had he not received any part of it, his promise to pay the $1,000 unconditionally and the consideration of marriage would alone have been a sufficient consideration for appellant's promise not to claim any dower in his, Smith's, property.    Add to this his agreement not to claim any part of appellant's property in the event of her death before he died, and we have an unquestioned showing of a sufficient, if not an adequate, consideration.    That the contract did not specifically refer to marriage as being part of the consideration is immaterial.    It does show that it was made in contemplation of marriage, and it attempts to fix the property rights of the parties with reference thereto.    Marriage, then, was manifestly one of the considerations for the contract.    *McNutt v. McNutt, supra.*    In *Spurlock v. Brown,* 91 Tenn. 241 (18 S. W. 868), relied upon by appellant, there was a strong dissenting opinion, and it further appears that the contract there construed confined the consideration expressly to the conveyance made by the husband to the wife, and was by the court treated as pecuniary only.    The entire decision is based upon two propositions, however:    (1) That the contract was so inequitable that a court of chancery would not enforce it, which, for reasons already stated, do not apply to the instant case; and (2) that it was procured by a species of fraud or mistake which nullified the same. That is not the case here.

No reason appears for disturbing the decree of the trial court, and it is *affirmed*.