ALBERT E. CLARK et al., Appellants, v. CHARLES C. CLARK et al., Appellees.

No. 40028.

MARCH 18, 1930.

*Crary & Crary, A. G. Hess,* and *Milchrist, Schmidt, Marshall & Jepson,* for appellants.

*Jepson, Struble, Anderson & Sifford,* for appellees.

DE GRAFF, J.—On January 24, 1927, the defendant Charles C. Clark conveyed by warranty deed to his wife, Lizzie, co-defendant, a 305-acre farm located in Woodbury County, Iowa. On the same day, by a bill of sale, he transferred to her his chattel property on said farm. At said time, the farm was mortgaged in the approximate sum of $30,376. The personal property was also incumbered, at the time of the transfer, by several mortgages, which were renewed by Lizzie Clark, a few days after the transfer, by the execution of a new mortgage for $7,000.

It further appears that, on November 10, 1927, a judgment was entered against Charles C. Clark in an accounting action in which James A. Clark (father of Charles C.) was plaintiff, and the said Charles C. was the defendant. The judgment entered was in the sum of $17,195.76, costs $863.75, and interest at 6 per cent from the date of the judgment. We deem it unnecessary to recite the transactions between the father and the son giving rise to the judgment aforesaid. There was no appeal from said judgment.

The instant action was commenced to set aside the conveyance and transfer heretofore mentioned, as fraudulent and without consideration. A decree was prayed that the conveyance and bill of sale be held null and void, and that the property, both real and personal, so conveyed and transferred to Lizzie Clark by her husband be subject to the payment of plaintiff's judgment, with interest and costs.

The law governing fraudulent conveyances has been frequently defined and applied by this court; but it may be well, at the outset, to restate briefly some of the legal principles applicable to a case of this character. We are here dealing with transactions between husband and wife. If this husband was in fact honestly indebted to his wife, and the conveyance and transfer were made, received, and accepted in good faith, in payment or satisfaction of such indebtedness, and the consideration was not grossly inadequate, it may be said that the conveyance and transfer were not fraudulent, and will not be set aside, nor the property subjected to the creditors of the husband, even though it operates to hinder or prevent the collection of their claims. *Crenshaw v. Halvorson,* 183 Iowa 148. In the instant case, some of the pleaded items upon which the wife predicates the husband's indebtedness to her are somewhat ''ancient,'' and the accounts kept of said transactions are not in such form as a bookkeeper would record same; but the evidence is such as to create the fair inference that the money and property received by the husband from the wife were not mere gifts or gratuities, but given and accepted with the expectation on the part of both husband and wife that the husband would account and make payment therefor to her. There is no presumption of fraud by reason of the existing family relationship of these parties, although a court of equity will scrutinize more closely the facts attending the transaction than if the same were between strangers. *Barks v. Kleyne,* 198 Iowa 793. The record evidence before us, although it discloses some claims antedating the instant transaction by many years, does tend to establish that an agreement and understanding existed between the parties that the wife's property and moneys that were turned over by her to the husband for his use were given and received with the expectation that the husband should repay same to his wife. Thereby she became the creditor of her husband. In order to

set aside this conveyance on the ground that it is fraudulent as against creditors, it must be shown that it was made with the intent to hinder and delay creditors. But a creditor, acting in good faith, may take security from his debtor, or secure payment of his debt, "although he [creditor] knows that there are other creditors whose claims will thereby be defeated. And even knowledge on his part that the debtor is actuated by a fraudulent purpose is not sufficient to avoid the conveyance to him, if he acted in good faith and for the purpose of securing payment of his debt, and not for the purpose of aiding the fraud. * * * The insolvency of the grantor does not alone render his conveyance fraudulent." *Grant v. Cherry,* 199 Iowa 164. There can be no question that a wife who has a bona-fide claim against her husband may, when actuated by the sole and good-faith purpose of obtaining payment, take a nonexcessive conveyance of property from her husband, "even though she knows, at the time, that the husband is financially embarrassed, and intends by the conveyance to circumvent another of his creditors." *Carlisle v. Milliman,* 199 Iowa 949. It is a well established rule in this state that a debtor is entitled to prefer any one of his creditors by payment of the debt or by conveying property to him in satisfaction of the debt, though it be to the disadvantage of other creditors. In *Carlisle v. Milliman,* 199 Iowa 949, it is said:

"The wife is certainly entitled to as much consideration as other creditors would be in the securing or payment of debts due from her husband."

See, also, *Meyer & Bros. v. Houck,* 85 Iowa 319; *Steinfort v. Langhout,* 170 Iowa 422; *Farmers Loan & Tr. Co. v. Scheetz,* 196 Iowa 692. The purport of the decision in *Cover v. Wyland,* 205 Iowa 915, is that a conveyance by an insolvent husband to his wife is not voluntary or fraudulent merely because his wife's claim for money loaned in payment of such conveyance was barred by the statute of limitations; but such fact should be considered in determining the character of the transaction.

"The claim was, of course, barred by the statute of limitations. This was a defense which the debtor could waive, and

the mere fact that the claim was barred does not make the conveyance either voluntary or fraudulent.''

See, also, *Aldrich v. Van Hemert*, 205 Iowa 460.

With these legal pronouncements in the foreground, we turn to the controlling facts. We first inquire, What was the value of the equity which the wife secured by the conveyance of the 305-acre farm? There is in this case, as in every case of this character, quite a variance in the opinion evidence as to the value of the land, as expressed by witnesses called by the plaintiff and by the defendant. Nothing will be gained by a detailed review of this opinion evidence. It is sufficient to state that, after a careful study of the record in this particular, and after determining the qualifications of the said witnesses to speak on the question of value, by reason of their experience in such matters and their personal knowledge of the value of this land and lands similarly situated in that community, we reach the conclusion that the reasonable market value of the Clark farm on January 24, 1927, was between $140 and $150 per acre. The mortgage indebtedness was not less than $30,376. There existed an equity, therefore, in the 305 acres belonging to the husband of approximately $12,000 to $15,000. In this connection it may be said that 8 acres of the husband's 305-acre farm had been taken for a drainage ditch right of way, and 7 acres for a public highway, and that 40 acres were exempt as his homestead. These figures would necessarily reduce the value of the equity heretofore estimated; and the trial court, taking these facts into consideration, could have found that the equity in the property conveyed to the wife did not exceed the husband's indebtedness to the wife.

Turning for a moment to the personal property transferred by a bill of sale to the wife, it is undisputed that said personal property was incumbered for $7,000, the major part of which represented the purchase price of the live stock on the farm. This property was sold, with the exception of certain items. 75 hogs included in the bill of sale had died. The property remaining after the sale by the wife included 8 head of horses, an automobile, upon which there was $300 due, a tractor, farm machinery, including spreader, upon which there was $200 or $300 due, and a few cows and hogs, which we judge were not in

excess of the statutory exemptions. It is our conclusion that the chattels conveyed to the wife by bill of sale had a value of about the indebtedness against the property. There was little, if any, equity in said personalty.

We next inquire what was the basis for the claim of the indebtedness owed by the husband to the wife at the time of the conveyance in question. It may be stated, incidentally, that the wife was the title holder of 240 acres of land situated in Woodbury County. This land was inherited by her from her father, and was used in part by her as credit for the husband, by way of mortgage.

By way of prefatory statement, it may be said that there is a quite limited showing in the way of direct denial of the matters offered in defense. The material facts to sustain the indebtedness which constituted the consideration for the conveyance from the husband to the wife are, in the main, undisputed.. It is contended, however, by the plaintiff that the showing made by the defendants is unreasonable, if not incredible, and is in itself sufficient to stamp the transaction as fraudulent. With this claim we cannot agree. As said in *Hansen v. First Nat. Bank,* 197 Iowa 1101, 1. c. 1104:

"We think in terms of their probability [facts and circumstances] and in the last analysis, the weight to be given the evidence rests, as Greenleaf said, 'upon our faith in. human testimony, as sanctioned by experience.' "

The testimony offered by these defendants is reasonable, and, when we consider the relationship of the parties, it is natural. Lastly, their testimony is not seriously disputed. True, the husband began the process of borrowing from his wife shortly after their marriage, and this money or property came to the wife from her parents, as gifts, and was then turned over for the use and benefit of the husband. If these early items of loan from the wife to the husband were the sole consideration for a conveyance from the husband to the wife, we would not be inclined to view said conveyance with favor; but all of the facts and circumstances at that time and later must be considered together, and the weight to be given all of the facts, both immediate and remote, must be viewed in combination. *First Nat. Bank v. Hartsock,* 202 Iowa 603. It is a composite photograph

that we visualize. The pleaded laches constitutes no defense, and, as heretofore pointed out, the statute of limitation may be waived. *Cover v. Wyland* (205 Iowa 915), supra. It is undisputed that there was, at the time of the conveyance in question, an indebtedness owed by the husband to the wife. It is the sufficiency thereof that is in question. She had turned over to her husband cash in various amounts which she had received from her mother, and which the husband had used. For example, $800 was used by him to repair and rebuild the residence on his land. The wife gave to him live stock which she received from her father, which stock was later sold by the husband for $1,300. The husband had collected and appropriated to his own use the rents arising from the wife's 240 acres of land for a period of eight years. There is some discrepancy between the answers to the interrogatories attached to the petition and the testimony offered by the defense as to the annual rents received. The fact stands, however, that the husband had the reasonable value of the use of the wife's land during this period. The evidence justifies a finding that the average rental was $1,000 per annum. Upon the death of the wife's father and mother, in 1918, she received from the estate of each, cash distributions aggregating approximately $2,200, which she turned over to the husband. In 1920, the wife gave to the husband three Liberty bonds, in the amount of $150. It is shown that the wife did place in the husband's hands property and money (not including several donations made in their early married life), and that the indebtedness owed by him to her is in excess of the equity in the farm which she received from him by the warranty deed on January 24, 1927. Nor does the foregoing computation include the mortgages which Lizzie placed upon her land, in conjunction with mortgages placed on his land, approximating $15,000, which she will be compelled to pay, even if it be conceded that she was, in the first instance, but a surety for the husband on the loans made to the husband by the mortgagees named in said conveyances.

The record in this case is quite voluminous, and we have not attempted to detail in this opinion all of the transactions between husband and wife during the period involved. It is sufficient to state our conclusion, after a careful perusal of the evidence, that the plaintiff has failed to establish the material

allegations of the petition. The trial court ruled correctly, and properly dismissed the filed petition.—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.