W. J. Benson et al., Appellants, v. A. W. Burgess et al., Appellees.

No. 41319.

June 24, 1932.

C. J. Thurston, for Appellants J. A. Gray and Mary A. Gray.

C. E. Cooper, for Appellants W. J. Benson and Clarissa M. Benson.

Prichard & Prichard, for Appellees.

KINDIG, J.—The Citizens State Bank of Onawa was organized during the year 1916. This bank failed in the year 1921, and its assets were thereafter liquidated by a receiver. At the time the Citizens State Bank closed its doors, it owed, among others, two obligations involved in the present controversy. These indebtednesses were held respectively by the First National Bank of Council Bluffs, and Monona County, Iowa. Notes apparently were discounted by the Citizens State Bank of Onawa to the First National Bank of Council Bluffs. Such notes were endorsed not only by the bank, but also guaranteed by the plaintiffs-appellants W. J. Benson and J. A. Gray and the defendant-appellee A. W. Burgess.

So, when the Citizens State Bank closed, it was necessary for the guarantors to pay the First National Bank of Council Bluffs the amount due on the discounted notes. Monona County, Iowa, became a depositor in the Citizens State Bank of Onawa upon the condition that a sufficient bond be given to secure the deposit. Accordingly, a bond was executed to Monona County by the appellants W. J. Benson and J. A. Gray and the appellee A. W. Burgess and others. Consequently, when the bank closed, it was necessary for the guarantors to pay the county's deposit. A. W. Burgess, the appellee, did not pay any part of either obligation. Therefore, it became necessary for the appellants W. J. Benson and J. A. Gray to satisfy not only their own obligations, but those of the appellee A. W. Burgess as well. Thus the appellants W. J. Benson and J. A. Gray satisfied both the obligation which the Citizens State Bank owed Monona County and the First National Bank of Council Bluffs.

When these obligations were thus paid by the appellants W. J. Benson and J. A. Gray, they received assignments thereof. Apparently the appellant Mary A. Gray obtained some interest through assignment in the claim for subrogation against A. W. Burgess. Likewise, the appellant Clarissa M. Benson received a similar claim.

The appellants paid the indebtedness to Monona County and the First National Bank of Council Bluffs in February, 1926. Thereafter suit for contribution was commenced by the appellants, W. J. Benson, J. A. Gray, Mary A. Gray, and Clarissa M. Benson, against the appellee A. W. Burgess. These appellants, on September 11, 1930, obtained a judgment in contribution against the appellee A. W. Burgess. An execution was duly issued on the judgment, but returned by the sheriff unsatisfied because no property could be found in the name of the appellee A. W. Burgess. Believing that they had located property in the name of the defendant-appellee Helen A. Burgess which in fact belonged to the appellee A. W. Burgess, the appellants commenced the present action October 22, 1930, to set aside certain conveyances made by A. W. Burgess to Helen A. Burgess on the theory that the same were without consideration and in fraud of creditors.

Said property thus claimed to be held by the appellee Helen A. Burgess in fraud of the creditors of the appellee A. W. Burgess may be divided generally into three parts: First, that which was obtained by the appellee Helen A. Burgess with her own funds before she became the wife of the appellee A. W. Burgess; second, that which was received by the appellee Helen A. Burgess as a part of a marriage agreement before she became the wife of the appellee A. W. Burgess; and, third, that which the appellee Helen A. Burgess purchased with her own funds after the marriage. Helen A. Burgess received title to eighty acres of land in Sherman Township, Monona County, Iowa, in the year 1916. That was before she became the wife of the appellee A. W. Burgess. A. W. Burgess and Helen A. Burgess, the appellees, were married August 27, 1922. All the other property involved in this litigation was obtained, with one exception, by the appellee Helen A. Burgess on August 25, 1922, two days before her marriage to the appellee A. W. Burgess, but as a part of the marriage agreement. Such property, according to the description of the parties, involves Onawa town lots, encumbered Woodbury County land, the "Kennebec Township farm" in Monona County, and North American Life & Casualty Company stock. Later, with the accumulations from the foregoing property, the appellee Helen A. Burgess purchased an automobile, made a bank deposit, and obtained certain tax certificates. The realty which Helen A.

Burgess purchased after her marriage is known in the record as the "Nord property", in Onawa. This last-named property is now the homestead of the appellees.

It is said by the appellees that the Sherman Township eighty acres of land were purchased by the appellee Helen A. Burgess with her own money several years before her marriage. Therefore she obtained the same legally, for an adequate consideration. Also, it is contended by the appellees that the appellee Helen A. Burgess received the other named property for a valuable and legal consideration. This consideration, except for the aforesaid Nord property, the appellees declare embraces two matters: First, the cancellation of an indebtedness which the appellee A. W. Burgess owed to the appellee Helen A. Burgess; and, second, the agreement of marriage. In the third place, the consideration for the Nord property, purchased by Helen A. Burgess in 1926 after the marriage, is said by the appellees to have been paid for with her own funds. Thus it is maintained by the appellees that the title to the foregoing property is legally in the name of, and owned by, the appellee Helen A. Burgess.

I. The appellee Helen A. Burgess, then Helen A. Allen, earned money by teaching school and performing the duties of the librarian in Onawa. She also received some money from her father. According to the record, she desired to invest this money, and for that purpose consulted the appellee A. W. Burgess, who was a lawyer at Onawa, engaged not only in the law practice, but likewise in the investment business. Mr. Burgess advised her to purchase a farm in Monona County; known in the record as "the Sherman Township eighty".

Accordingly the appellee Helen A. Burgess, then Helen A. Allen, in the year 1916, purchased the land. Title was taken, not in the name of Helen A. Allen, but in the name of Walter Burgess, the father of the appellee A. W. Burgess. An explanation is furnished for this transaction. Apparently the library trustees at Onawa objected to increasing the salary of the librarian Helen A. Allen because they had learned that she had considerable property and did not need an added salary. So, in order to avoid the appearance of possessing property at the time an increase in salary was under consideration, Miss Allen took title to the land in the name of Walter Burgess. Soon thereafter Walter Burgess deeded the farm to the appellee Helen A. Allen,

now Helen A. Burgess. Thereafter she paid the taxes thereon and executed a mortgage on the land for the purpose of securing a loan. That transaction occurred before the appellee A. W. Burgess had incurred the indebtedness which is the basis of the present litigation. Likewise this transaction occurred six years before Helen A. Allen and A. W. Burgess were married. While it is true that the appellee A. W. Burgess managed the land, he did so nevertheless as the agent of Helen A. Allen.

Under this record, we are constrained to hold that this eighty acres of land now lawfully belongs to the appellee Helen A. Burgess. It was purchased with her money, and although Walter Burgess at first took title thereto in his name, she soon thereafter obtained the title and now is the legal owner thereof.

II. There naturally is next suggested for consideration the question whether the appellee Helen A. Burgess, formerly Helen A. Allen, paid a valuable consideration for the property which she received from appellee A. W. Burgess on August 25, 1922, two days prior to the time of their marriage on August 27, 1922.

As before explained, the consideration given by the appellee Helen A. Burgess for this property may be divided into two parts: First, $3,603 representing moneys which the appellee Helen A. Burgess claims to have previously loaned the appellee A. W. Burgess; and, second, the agreement of marriage. According to the record, there can be little doubt that the appellee Helen A. Burgess formerly loaned the appellee A. W. Burgess the $3,603. This obligation apparently was cancelled at the time the appellee A. W. Burgess conveyed the aforesaid property to her. Assuming, however, without deciding, that there is doubt about this transaction, and that this consideration in and of itself would not be sufficient under all the circumstances to support the conveyance without the agreement of marriage, we now proceed to review the marriage contract.

■ Both appellees testified that a consideration for the conveyance of this property by the appellee A. W. Burgess to the appellee Helen A. Burgess was a contract of marriage entered into before the performance of the ceremony. Appellees are sustained in their contention that the property was conveyed in consideration of marriage because the deeds were prepared on North Dakota forms dated two days before the marriage. The appellees were married in North Dakota. These deeds were acknowledged

before a North Dakota notary public at the time of their execution. Although the deeds were not immediately placed of record, yet the appellee Helen A. Burgess paid the taxes on the properties thus received and obtained the incomes therefrom. From time to time the deeds, after their execution, were placed of record. During the times the deeds were not of record, however, whenever the occasion arose, the appellees claimed to the world that the property belonged to Helen A. Burgess. Sometimes A. W. Burgess assumed an inconsistent position, indicating that he, rather than his wife, owned the land. Those inconsistencies, however, are explained. Plainly it appears from the entire record, therefore, that the property was conveyed by the appellee A. W. Burgess to the appellee Helen A. Burgess in consideration of marriage.

An attack is made by the appellants on the validity of the marriage. Manifestly, however, this is without merit. Nothing appears in the record to indicate an invalid marriage. The marriage ceremony as before said was performed in North Dakota and thereafter the appellees have lived together as husband and wife.

But it is contended by the appellants that the contract of marriage which is the alleged basis for the conveyance of the property was not in writing, and therefore within the statute of frauds. Section 11285 of the 1931 and preceding Codes, provides:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:

"1.  Those made in consideration of marriage. * * *"

Objections were interposed to appellee's evidence offered to prove that the conveyance was made in consideration of marriage. The district court, however, overruled the objections and admitted the evidence. Hence, it is contended by the appellants that error appears. Obviously, however, this contention is not well founded. Appellants are not parties or privies to the contract, but rather strangers thereto. 25 Ruling Case Law, 736, Par. 385. Therefore the appellants cannot interpose the objection under the statute of frauds. Lamb v. Morrow, 140 Iowa 89 (local citation, 96) ; Shedenhelm v. Cafferty, 174 Iowa 195 (local citation, 199) ; Wapsipinicon Power Co. v. Waterhouse, 186 Iowa

524 (local citation, 530) ; Kramer v. Mericle, 195 Iowa 404 (local citation, 408).

"The statute of frauds is not involved. No party to the agreement raises such question. On the contrary, they all pleaded (the contract) and testified to it. That objection (the statute of frauds) is not available to the defendants who were not parties to the agreement." Shedenhelm v. Cafferty (174 Iowa 195), supra, local citation 199.

Under the statute the prohibition was directed against certain evidence. There is no prohibition against the enforcement of the contract itself, if it can be proven. So the contract may be oral as well as written. 30 Corpus Juris 627, Sec. 182. The statute itself contemplates this.

" 'Marriage is a consideration of the highest value, and any contract or promise which brings about or helps to bring about a marriage is binding when the marriage has taken place.' " Wright v. Wright, 114 Iowa, 748 (local citation, 751).

For similar pronouncements see: In re Estate of Thorman, 162 Iowa 316; Nesmith v. Platt, 137 Iowa 292 (local citation 297) ; In re Estate of Adams, 161 Iowa 88, local citation, 92; 30 Corpus Juris, 631, Sec. 192.

A consideration of marriage, as sustained by the foregoing cases, is to be distinguished from a promise of a wife "to perform for her husband duties which are inherent in the marriage relation". See Bohanan v. Maxwell, 190 Iowa 1308. Here A. W. Burgess agreed to and did convey the property in question to the appellee Helen A. Burgess in consideration of marriage. That consideration is a legal one and will support the conveyance, unless there was fraud. Then it is further necessary to inquire whether there is fraud because the marriage settlement "was grossly out of proportion to the husband's station and circumstances".

"Such settlements (marriage settlements) have been upheld, even when it was known to the wife that the husband was indebted, the settlement not being grossly out of proportion to his station and circumstances." Gordon v. Worthley, 48 Iowa 429 (local citation 430-1).

Helen A. Burgess in the case at bar cannot be said to have

entered into a conspiracy to defeat her husband's creditors. Nor does the record indicate that the property transferred to her in consideration of marriage was grossly out of proportion to her husband's station and circumstances. A review of the record will convince the reader that the appellee Helen A. Burgess knew nothing of her husband's debts growing out of the bank transactions. She did not know that he had executed the bond to Monona County or guaranteed the note to the First National Bank of Council Bluffs. So far as the appellee Helen A. Burgess is concerned, then, no basis exists upon which it can be said that there was an attempt to defraud the creditors of the appellee A. W. Burgess. See First National Bank of Wilmont v. Eichmeier, 153 Iowa 154.

Mrs. Burgess formerly was a school teacher, and later for many years has been the librarian at Onawa. She still holds that position. Her husband is an attorney at law, who has practiced for many years. In order to understand the motives of the parties and their situation in life at the time the conveyances were made, it is necessary to look backward to the year 1922, when the marriage took place. When that is done it cannot be said that the property conveyed by the appellee A. W. Burgess to his wife Helen A. Burgess was grossly out of proportion to his station and circumstances. While it is true that the Citizens State Bank was then in the hands of a receiver, yet Mr. Burgess reasonably anticipated that seventy-five per cent of the bank's debts would be paid from its assets. Mr. Burgess, it is true, owed other obligations in addition to his liability to Monona County and the First National Bank of Council Bluffs, but he had sufficient property to satisfy them. As a matter of fact, he has paid them all except the debt now under consideration. The only remaining obligations are those involved in this litigation. If the receivership had paid seventy-five per cent of the bank's debts, including the obligations involved in the case at bar, the amount still owing by Mr. Burgess would be comparatively smaller. It was impossible to correctly forecast the result of the bank receivership in 1922 because of the unforseen depression which followed.

Moreover at the time when Mr. Burgess made the conveyances to his wife, he owned, in addition to the properties thereby transferred, the following properties: Forty acres of land west of Onawa valued at $4,000; tax certificates in the amount of $6,000; $2,000 in liberty bonds; stock in a tractor company for

which he had paid $1,750; notes and bills receivable valued at $10,000. From the foregoing assets, the appellee A. W. Burgess collected $7,156.15 with which he paid obligations. Unexpectedly the Missouri River characteristically washed away the forty acres of land. The above-mentioned business conditions made uncollectable a large amount of notes and bills receivable, and likewise greatly depreciated the value of the tractor stock. Eliminating the eighty acres of land which Mrs. Burgess purchased before her marriage and the homestead, or "Nord property", which she bought thereafter, the remaining portion of her estate is rather small. Said excepted properties were not conveyed to the appellee Helen A. Burgess by her husband. Such properties, however, above described, which were actually conveyed to her by her husband are of modest values. In fact, those properties thus received by her under the marriage agreement did not exceed in value, according to the record, the net assets still retained by the appellee A. W. Burgess at the time of his marriage. The Woodbury County land, for instance, was subject to a large mortgage. Mrs. Burgess received only a one-half interest in the Kennebec Township farm in Monona County, and that also was heavily encumbered. Under all the conditions, it cannot then be said that the conveyances to her in consideration of marriage were grossly out of proportion to the station and circumstances of A. W. Burgess in August, 1922. Because of the agreement of marriage, even without the cancellation of the $3,603 indebtedness, there was a legal consideration for the conveyances. Although there is some evidence to the contrary, nevertheless it fairly appears that the automobile, bank account, and certain tax certificates named in the appellants' petition were purchased and accumulated respectively with the proceeds of the property belonging to the appellee Helen A. Burgess.

Consequently the district court did not have before it a record which would justify the granting of the relief prayed by appellants.

III. In the third place, there is for discussion the ownership of the so-called "Nord property". This, as before said, is the present homestead of the appellees in Onawa. Helen A. Burgess purchased this property in 1926 through the Onawa State Bank. It appears that the deed was executed at the time Mrs. Burgess bought the land, but remained with the bank until

she had paid for it. Mrs. Burgess accounts for her accumulation of sufficient money to buy the Nord property through the following explanation: Some of the money was received from her father. Other portions of it were obtained from insurance policies on her own life, as well as from insurance policies on her husband's life. That was done either through the cash surrender value of the policies or by obtaining loans thereon. Also Mrs. Burgess received income from her other properties previously mentioned. Both Mrs. Burgess and her husband testified to these facts. Their testimony in that regard is in fact uncontradicted in the record. Furthermore, it seems that certain other exempt property may have been used to purchase this homestead.

A suggestion is made by the appellants that rebuttal of appellees' testimony in this respect may be found in inconsistencies and certain circumstances. Without going into a detailed discussion of this matter, it is enough to say that the record indicates the correctness of the appellees' testimony. At least, the preponderance of the evidence sustains them. Therefore appellants cannot subject appellees' homestead to the payment of their judgments.

Wherefore, the judgment and decree of the district court must be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.