TERRE HAUTE BREWING COMPANY, INC., Appellant, v. JOHN OSCAR LINDER et ux., Appellees.

No. 46126.

360

DECEMBER 15, 1942.

REHEARING DENIED APRIL 9, 1943.

Frank D. Capel, of Council Bluffs, and Abrahams, Frenzer & Hills, of Omaha, Nebraska, for appellant.

John J. Hess, of Council Bluffs, and Will H. Thompson, of Omaha, Nebraska, for appellees.

GARFIELD, J.—Plaintiff, an existing creditor of defendant Linder, attacks as voluntary and fraudulent the deed made by him to his wife and codefendant, Astrid Marie Linder.

In 1934 Linder was a distributor of beer in Omaha. On December 29, 1934, together with his then wife Selma, he made to plaintiff a note for $15,000, secured by a mortgage on his business property at 1207 Douglas Street in Omaha. On Decem-

ber 1, 1936, a real-estate agent prepared, and Linder, while still married to Selma but separated from her, entered into the following written agreement with his codefendant, then Astrid Marie Anderson, whom he later married:

"Whereas John Oscar Linder of Council Bluffs, Iowa and also of Omaha, Nebraska is desirous of entering into a marriage contract with Astrid Murie Anderson of Council Bluffs and Loveland, Iowa, and

"Said Astrid Murie Anderson being desirous of protecting both herself and any children that might be born to such a union and also in compensation of her giving up her career as a REGISTERED NURSE, exacts from said John Oscar Linder the following agreement and which shall be fulfilled by said John Oscar Linder, either before the marriage or within a reasonable time thereafter, to wit:

"That said John Oscar Linder shall convey by deed all of his real property located in the City of Council Bluffs and Pottawattamie County, Iowa and also by proper assignment all of his personal property.

"That the compensation for said conveyances shall be that said Astrid Murie Anderson will enter into said marriage contract with said John Oscar Linder and become his lawful, wedded wife.

"That all of said property, both real, personal and mixed shall become the sole property of said Astrid Murie Anderson and shall be for the sole use of said Astrid Murie Anderson and any children born to this union.

"That in case of separation said John Oscar Linder hereby binds himself not to claim any of said property as his own and that same shall at all times immediately after said marriage ceremony is performed be treated as the property only of said Astrid Murie Anderson."

On January 21, 1937, Linder filed suit against Selma for divorce in the district court of Douglas County, Nebraska. A divorce decree was entered on March 6, 1937, requiring Linder, pursuant to stipulation of the parties, to pay $10 per week for the support of his former wife and their minor child. On March

8, 1937, the two defendants, Linder and Astrid Marie, were married at Sabetha, Kansas. After a day and night in Kansas City they returned to Omaha, where they lived for a month, following which they made their home at Loveland and in Council Bluffs, Iowa. Two children were born to the marriage.

On June 29, 1937, Linder made to his codefendant the deed in question for the recited consideration of "One dollar, love and affection," conveying eight lots or parts of lots in Council Bluffs, two tracts in Pottawattamie county outside of Council Bluffs, and the property located at 1209 Douglas Street, Omaha, which adjoined 1207 Douglas upon which plaintiff held its mortgage. The deed was filed for record on August 11, 1937.

On August 26, 1937, plaintiff commenced suit in Douglas County, Nebraska, against Linder and his first wife Selma, on their $15,000 note, aided by attachment upon the mortgaged property at 1207 Douglas, and also upon 1209 Douglas. On May 17, 1938, plaintiff recovered judgment against Linder and Selma for $14,463 and the attached realty was ordered sold. At the sale it brought $3,500. On January 30, 1939, execution was issued and returned unsatisfied by the sheriff of Douglas county. Linder later commenced suit in Douglas county for the cancellation of plaintiff's judgment and to restrain its enforcement. The decree in that suit was adverse to Linder. See Linder v. Terre Haute Brewing Co., 139 Neb. 636, 298 N. W. 545.

The present suit was commenced on February 23, 1939. The petition alleges that the deed from Linder to his codefendant was made to hinder, delay, and defraud his creditors. The answer of the second Mrs. Linder, the grantee, admits the execution of the deed but denies all other allegations of the petition, alleges there was good consideration for the deed, and that she is the rightful owner of the property. Following trial of the present suit the court awarded plaintiff a judgment against Linder for $11,-456.34 but denied plaintiff any further relief. The court found there was good consideration for the deed and quieted the grantee's title against plaintiff's claim. Plaintiff has appealed.

Appellant's principal contention is that the above written agreement between the appellees is illegal, contrary to public policy, and void, because Linder was then married to Selma, and

that the deed in performance of the agreement was purely voluntary and constructively fraudulent as to appellant.

I. A conveyance without valuable consideration is voluntary and constructively fraudulent as to an existing creditor of the grantor and will be set aside in a suit by such creditor unless the grantee proves, he having the burden, that the grantor retained sufficient property to pay the debts owing by him at the time of the conveyance. Grimes Sav. Bk. v. McHarg, 224 Iowa 644, 647, 276 N. W. 781; Commercial Sav. Bk. v. Balderston, 219 Iowa 1250, 1256, 260 N. W. 728, and cases cited; First Nat. Bk. v. Currier, 218 Iowa 1041, 1048, 256 N. W. 734, and cases cited. See, also, 24 Am. Jur. 182, section 24; 1 Glenn on Fraudulent Conveyances, Rev. Ed., 459, 460, section 270; Bump on Fraudulent Conveyances, 4th Ed., 282, 283, sections 243, 244.

II. Was there valuable consideration for the deed? The consideration recited in the instrument itself of ''One dollar, love and affection'' is clearly insufficient to support a conveyance as against existing creditors. Grimes Sav. Bk. v. McHarg, supra; Shaw & Kuehnle v. Manchester, 84 Iowa 246, 248, 50 N. W. 985. However, the recital in the deed (which was prepared by the same real-estate agent who wrote the contract) is not conclusive on the question of consideration. Other evidence is admissible in a suit of this kind to prove what the real consideration was. Aultman Engine & T. Co. v. Greenlee, 134 Iowa 368, 373, 111 N. W. 1007; Chantland v. Sherman, 148 Iowa 352, 358, 125 N. W. 871, and cases cited; Nissen v. Sabin, 202 Iowa 1362, 1364, 212 N. W. 125, 50 A. L. R. 1216, and cases cited.

III. We consider now the validity of the antenuptial contract and whether it constituted sufficient consideration for the conveyance. It is well settled that a marriage contract between a man and woman, one of whom is already married, *such fact being known to the other,* is contrary to public policy, illegal, and void.

It is equally well settled that if the unmarried party to the contract is ignorant of the existing marriage of the other, she can recover for the breach of the married party's promise of marriage. 11 C. J. S. 772, section 2f; 8 Am. Jur. 848, section 4; 5 Williston on Contracts, Rev. Ed., 4568, 4569, section 1631; annotations, 47 A. L. R. 400, L. R. A. 1918B, 68, Ann. Cas.

1914A, 695; Restatement of Contracts, section 588, comment b; id., section 599. These authorities proceed upon the theory that one who enters into a marriage agreement, even though incapacitated, should not be permitted to set up his own wrong in defense to an action by the innocent party. This rule is at least inferentially recognized in Morgan v. Muench, 181 Iowa 719, 727, 156 N. W. 819, 822, where we say, "* * * an action may not be based upon a promise of marriage before a divorce, plaintiff knowing that fact * * *."

Some authorities say that knowledge by the unmarried party of such facts as would lead an ordinarily prudent person to believe that the other was married is the equivalent of knowledge. 8 Am. Jur. 848, section 4.

The trial court found that Astrid Marie at all times believed Linder was free to marry her. Appellant contends this finding is not supported by the evidence. Linder and Astrid Marie became acquainted in January or February 1936. She was then taking nurse's training from which she was graduated the following September. Linder and his first wife had separated, she having gone to California where she expected to get a divorce. Linder was then twenty-four. Linder testified as a witness for appellant, on direct examination, that he told Astrid Marie during 1936 that his wife and he were getting a divorce. His wife had written Linder that she was getting a divorce and expected to get the papers regarding it from the courts in California. Since he received no notification that his wife had obtained a divorce, Linder himself brought suit for divorce in Douglas County, Nebraska, on January 21, 1937.

Testifying in her own behalf on direct examination, Astrid Marie said that about December 1, 1936, when the contract was made, she knew Linder had been married but thought he was divorced. On cross-examination she said she saw Linder from time to time during 1936 and thought he was divorced; that he had told her his wife had left for the purpose of getting a divorce and that she was getting it; she supposed Selma had gotten the divorce; in September or October 1936, Linder told her he was not sure the divorce had been granted, that he was going to look into the matter and find out; that she assumed he was doing

so and trusted him; that Linder told her definitely in March 1937, that he had gotten a divorce but nothing definite was said about the matter between September or October and March.

The above is the substance of all the testimony on the knowledge of Astrid Marie regarding the marital status of Linder when the contract was made. Giving to the finding of the trial court the weight to which it is entitled because of its superior opportunity to determine fact questions, we are not prepared to hold that Astrid Marie knew on December 1, 1936, that Linder was not divorced or that she had knowledge of such facts as would lead an ordinarily prudent person so to believe. It is true her positive testimony on direct that she believed the divorce had been granted is somewhat weakened on cross-examination. But we do not agree with appellant's contention that it appears from her own testimony that she knew when the contract was made that Linder had not been divorced. Indeed, there is no evidence that Selma had not procured a divorce in California prior to December 1, 1936, unless such inference may be drawn from the fact that Linder himself brought his divorce suit in the latter part of January. Ordinarily, one who enters into a contract of marriage has a right to assume that the other is eligible to marry. Waddell v. Wallace, 32 Okla. 140, 121 P. 245, Ann. Cas. 1914A, 692, 694. In the absence of any evidence on the question, Astrid Marie had a right to believe that Linder was free to marry her.

Since we are not prepared to disturb the trial court's finding regarding the belief of Astrid Marie, it follows from the authorities heretofore cited that if Linder had refused to perform the contract she could have recovered from him the damages suffered by her from the breach. It is a fair inference from the testimony of the appellees and the scrivener who drew the contract and deed that the conveyance was made in fulfillment of the contract. The agreement provided that the deed should be made within a reasonable time after the marriage. Since the contract was a valid obligation in the hands of Astrid Marie, it constituted valuable consideration for the deed. 24 Am. Jur. 234, section 83. In other words, the conveyance cannot be set aside as voluntary on the theory that the contract was illegal.

Appellees argue, in effect, that regardless of the validity of the contract, the marriage was sufficient consideration for the

deed. Our conclusion as to the validity of the agreement makes it unnecessary for us to pass on this contention.

IV. Although appellant's principal claim is that the conveyance was voluntary, it is also contended that it was fraudulent in fact.

█ If the antenuptial contract made Astrid Marie the creditor of Linder and she became by the conveyance "a creditor purchaser," taking the deed in satisfaction of her claim, then, under a long line of our decisions, the deed cannot be set aside unless Linder acted with fraudulent intent and she actively participated therein. Under these cases, mere knowledge or notice by the grantee of grantor's fraudulent intent is insufficient to invalidate the deed. Knabe v. Kirchner, 228 Iowa 1156, 1170, 293 N. W. 433, and cases cited; Clark v. Clark, 209 Iowa 1179, 1182, 229 N. W. 816; Erusha v. Wisnewski, 207 Iowa 1187, 1188, 224 N. W. 517, and cases cited.

It is not necessary to decide whether this case falls within the rule of these decisions. In any event, the deed, assuming there was valuable consideration for it, may not be set aside as fraudulent if the grantee acted in good faith and without knowledge or notice of any intent by the grantor to defraud his creditors. Fraud on the part of the grantor alone is insufficient to invalidate the conveyance. Knabe v. Kirchner, supra, and cases cited; First Nat. Bk. v. Currier, supra; annotation, 41 A. L. R. 1163, 1167; 24 Am. Jur. 234, section 83. The relationship of husband and wife between grantor and grantee is not in itself sufficient to show fraud although it is a circumstance calling for scrutiny. Bartlett v. Webber, 218 Iowa 632, 634, 252 N. W. 892, and cases cited; 24 Am. Jur. 186, section 28.

We affirm the trial court's finding that fraud does not appear. Fraudulent intent on the part of Linder is not clearly shown. Appellant recognizes that Linder's primary object was not to defraud it, but contends his purpose was to defraud his first wife and since the conveyance was fraudulent as to her it is also invalid as to appellant. The fact that a divorce was granted to Linder while his first wife was in California and that he stipulated to make the weekly payments of $10 for her support and that of their child is not entirely consistent with this claim.

There is no evidence that any of such payments have not been made.

But, even assuming the fraudulent intent of Linder, knowledge or notice thereof on the part of his codefendant does not appear. So far as the record shows, Linder was not owing anyone except appellant. Its claim was secured. The present Mrs. Linder testified she had no knowledge of the indebtedness to appellant and did not know at any time of any debts Linder might have in Omaha. There is no evidence to the contrary. There is no testimony that she knew he had a son whom he was under any obligation to support. The scrivener who drew the antenuptial contract and deed testified nothing was said about any indebtedness Linder might have had.

It is true the inference is that the deed covered all the real estate then owned by Linder except that at 1207 Douglas, Omaha, which was covered by appellant's mortgage. The record is silent as to whether Linder, pursuant to the contract, transferred to his codefendant his personal property. The extent of his personal property, if any, does not appear. Appellant contends, and there is evidence, that the property at 1209 Douglas which was included in the deed was worth not more than $2,500. We understand appellant obtained this Omaha property by its attachment suit in Nebraska and that only the other properties, located in Iowa, are involved here. There is no evidence of the character or value of any of the Iowa property conveyed by the deed. There is testimony that some rent was paid on some of the properties, although the amount does not appear. Perhaps the inference is that properties which were rented were not mere vacant ground. But there is no direct testimony regarding any improvements on any of the Iowa properties. Nor does the evidence show whether the title was clear or encumbered. It is shown that "the income from the property was not sufficient to pay the taxes and it has been sold for taxes."

On the whole record, we are content with the trial court's finding on the issue of fraud. Having some bearing on this branch of the case are Benson v. Burgess, 214 Iowa 1220, 243 N. W. 188; McNally v. Emmetsburg Nat. Bk., 197 Iowa 602, 192 N. W. 925; First Nat. Bk. v. Eichmeier, 153 Iowa 154, 133 N. W. 454.

368

We have considered all questions raised. In our opinion the case should be—Affirmed.

WENNERSTRUM, C. J., and STIGER, BLISS, and OLIVER, JJ., concur.

MITCHELL, SAGER, HALE, and MILLER, JJ., dissent.